MCDONALD CARANO WILSON LLP
Ryan J. Works, Esq. (NV Bar No. 9224)
Amanda M. Perach, Esq. (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone Number: (702) 873-4100
Facsimile Number:  (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Proposed Counsel for TEM Enterprises*

*Electronically Filed June 10, 2014*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>TEM ENTERPRISES,<br><br>            Debtor in Possession. | Case No.: 14-13955-abl<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING DEBTOR TO PAY EMPLOYEE WAGES, SALARIES, BENEFITS, REIMBURSABLE BUSINESS EXPENSES AND OTHER EMPLOYEE OBLIGATIONS; AND (II) AUTHORIZING PAYMENT OF CERTAIN CRITICAL VENDORS**<br><br>Hearing Date:  *OST Requested*<br>Hearing Time:  *OST Requested*<br><br>Hearing Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101 |

TEM ENTERPRISES d/b/a/ XTRA AIRWAYS ("Debtor" or "Debtor in Possession"), in the above-captioned case (the "Chapter 11 Case"), by this motion (the "Motion") hereby moves the Court for an order substantially in the form attached hereto as "**Exhibit 1**" (the "Order"), (1) authorizing, but not directing Debtor to pay certain employee salaries and benefits, and (2) authorizing but not directing Debtor to pay certain critical vendors, pursuant to

Bankruptcy Code sections 105(a), 363(b) and 507(a), Bankruptcy Rules 4001, 6003 and 6004, and Local Rule 4001(e).

This Motion is made and based upon the following memorandum of points and authorities, the Declaration of Lisa Dunn (the "Dunn Decl.") filed concurrently herewith the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b) and 507(a), Bankruptcy Rules 4001, 6003 and 6004, and Local Rule 4001(e).

4. Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

### II. BACKGROUND

5. On June 3, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Bankruptcy Code (the "Bankruptcy Code"). [Docket No. 1].

6. The Debtor is continuing in possession of its property and is operating and managing its businesses, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. No request has been made for the appointment of a trustee or examiner, and statutory committee has been appointed.

### III. RELIEF REQUESTED

    **a. Critical Vendors**

8.      Debtor utilizes at least three (3) vendors (the "Critical Vendors") which are necessary to the Debtor's continuing operations and are the subject of this Motion. Dunn Decl. at ¶ 4. The Critical Vendors and the pre-petition debt owed to such vendors are set forth in "**Exhibit 1**", attached to the Dunn Decl.

9.      Prior to filing the voluntary petition, Debtor incurred approximately $18,120.85 in pre-petition debt from these Critical Vendors. *Id*. at ¶ 5. Absent payment, the Critical Vendors may terminate their services which will result in a shutdown of the Debtor's operations. *Id*.

10.     For example, if the Debtor fails to pay Airline Economics, one of its Critical Vendors, by June 13, 2014, the Debtor will be prohibited from flying into Mexico's airspace. *Id*. at ¶ 15. Pursuant to an agreement with a U.S. Government agency, the Debtor must fly through Mexico's airspace nearly every day as it is tasked with the duty of returning illegal immigrants to Mexico from the United States. *Id*. In order to fly through Mexico's airspace, the Debtor must tender approximately 14,961.81 to Airline Economics in past due "overflight" fees. *See* Ex. 1, attached to Dunn Decl. Thus, if this payment is not made by June 13, 2014, it could result in a complete shutdown of operations. *Id.*

11.     In addition, the remaining Critical Vendors provide, *inter alia*, parts to the Debtor upon request when essential parts of the Debtor's fleet need repair or replacement and equipment, on rent, to allow the Debtor's aircrafts to back out of the runways. *Id*. at ¶ 6.

12.     Accordingly, in order to continue its operations, it is imperative that Debtor be authorized to tender payments to the Critical Vendors for repayment of pre-petition debt.

   **b. Salaries**

13.     Debtor employs approximately one hundred and forty (140) full-time and part-time employees (the "Employees") in the ordinary course of its business. Dunn Decl. at ¶ 7. Continued service by the Employees is critical to Debtor's ongoing operations and reorganization. *Id*. Among other things, Debtor's Employees manage day-to-day business activities, including bookkeeping, office management, and human resource responsibilities, piloting and reservations. *Id.*

14. As of the Petition Date, Debtor owes its Employees various sums for salaries (collectively, the "Salary Obligations"). A list of all Salary Obligations owed as of the Petition Date is set forth in "**Exhibit 2**" attached to the Dunn Decl. Debtor pays its Employees on a semi-monthly payroll cycle. Dunn Decl. at ¶ 8. When payroll checks are paid to Debtor's Employees, the Employees are paid current as of one week prior. *Id*.

15. The payroll for the first half of each month averages approximately $270,000.00 for Debtor. *Id*. at ¶ 9. The payroll for the second half of each month averages approximately $200,000.00 for Debtor. *Id*. No single Employee is owed in excess of $2,700.00. *Id*.

16. Additionally, Debtor withholds from its Employees' wages amounts for federal income, social security and Medicare taxes, and remits the same to the appropriate taxing authorities. *Id*. at ¶ 10. To the extent Debtor has withheld amounts pertaining to said taxes, Debtor seeks authorization to continue to deduct these funds and pay them to such governmental entities in the ordinary course of business. *Id.* Debtor also seeks authorization to continue withholding amounts from Employees' paychecks for applicable state and federal unemployment insurance, and to continue remitting such withholdings to the applicable state and federal taxing authorities.

   **c. Employee Benefits**

17. In the ordinary course of its business, and as is customary for most companies, Debtor has established various employee benefit plans and policies that provide certain Employees with medical, vacation, employee savings, and other similar benefits (collectively, the "Employee Benefits"). *Id*. at ¶ 11. The Employee Benefits are generally described below.

18. Health Insurance. An important element of the Employee Benefits is the medical insurance, fifty percent (50%) of which is paid by the Debtor. *Id*. at ¶ 12. The remaining fifty percent (50%) and any other fees arising from coverage of the Employee's family members is paid by the Employee through withholding on the Employee's payroll. *Id*. Debtor maintains a medical plan for its eligible Employees (the "Health Plan") administered by several different providers. *Id*. This Employee Benefit is made available to Debtor's Employees that meet the minimum employee eligibility requirements. *Id*. The cost of the Health insurance is

approximately $30,000.00 per month and is paid monthly during the first half of each month. *Id*. Pursuant to the Health Plan, Debtor pays a portion of the cost for coverage of each enrolled Employee. *Id*. As of the Petition Date, Debtor owes the providers of these Employee Benefits approximately $3,423.43. *See* List of Employee Benefits owed, attached to the Dunn Decl. as "**Exhibit 3**". By this Motion, Debtor seeks authorization to tender all Employee Benefits payments to the appropriate vendors.

19. Reimbursable Expenses. In the ordinary course of their employment, certain authorized Employees may have used their own personal credit cards or expended their own personal funds on behalf of and for the benefit of Debtor (the "Reimbursable Business Expenses"). *Id*. at ¶ 13; *see also* Ex. 2, attached to Dunn Decl. Employees rendered services and incurred Reimbursable Business Expenses in anticipation of receiving their standard compensation and reimbursements; however, as of the Petition Date, such obligations may remain unpaid and unreimbursed. *Id*. The amount of Reimbursable Business Expenses the Debtor has incurred, as of the Petition Date is approximately $3,704.40. *See* Ex. 2, attached to Dunn Decl. Debtor seeks authorization to pay such Reimbursable Business Expenses in the ordinary course of business.

20. Debtor submits that it is essential for the morale and maintenance of trust of the Employees that necessary steps are taken to protect the Employee Benefit Plans described herein, including the payment of the Employees' prepetition Salary Obligations, Health Plan obligations, Vacation Accruals, and Reimbursable Business Expense repayments. *Id*. at ¶ 14.

21. By this Motion, Debtor seeks authority to pay and/or honor the Salary Obligations and Employee Benefits described herein for its Employees. As set forth in the Dunn Declaration, the aggregate of Salary Obligations and Employee Benefit Contributions to be paid to or for the benefit of the Employees pursuant to this Motion will not exceed $12,475.00 per Employee per the cap provided in Bankruptcy Code section 507(a)(4).

**IV. LEGAL ARGUMENT**
   **a. An Order Authorizing Payment of Critical Vendors Is Necessary to Continue Debtor's Operations.**

As set forth in 11 U.S.C. § 105(a),

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Among the inherent powers acknowledged in Section 105(a) is the Court's power to, in limited circumstances, authorize the immediate payment of certain pre-petition claims. Under the "doctrine of necessity" the Court is authorized to "permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid." *In re Lehigh and N.E. Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *see also, In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) (noting that "cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation in such contexts as . . . debts to providers of unique and irreplaceable supplies.")

Here, the continued business operations of the Debtor are dependent upon the use of the equipment, parts and airspace provided by the Critical Vendors. In order to allow the Debtor an opportunity to reorganize, the Court must grant permission to pay current the Debtor's accounts with these Critical Vendors and to permit payment of all post-petition Critical Vendors as they become due, payable in the ordinary course of business.

### b. An Order Authorizing Payment of Pre-Petition Salary Obligations and Employee Benefits Is Necessary to Continue Debtor's Operations.

Payment of Salary Obligations and Employee Benefits, including, among other things, the repayment of Reimbursable Business Expenses and providing the other Employee Benefits identified above, are essential to preserve Employee morale and to maintain positive relations between Debtor and its Employees. If the relief requested herein is not granted, the success of Debtor's reorganization will be placed in substantial jeopardy. Thus, the relief requested in this Motion is in the best interests of Debtor, the Estate and creditors. Sections 105(a) and 363(b) of the Bankruptcy Code, in conjunction with sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, enable this Court to authorize Debtor to make prepetition payments for Salary

Obligations and Employee Benefits.[1] Further, section 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506 (9th Cir. 2002). The immediate payment of prepetition wage claims is necessary to retain Debtor's skilled Employees; therefore, such payments are critical to maintaining Debtor's ongoing businesses and its reorganization efforts. As a result, courts have held that pursuant to sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code, prepetition wage claims may be payable outside of a plan of reorganization by virtue of their necessity, as well as their priority. *See In re CEl Roofing, Inc.,* 315 B.R. 50,61 (Bankr. N.D. Tex. 2004); *In re The Colad Group, Inc.*, 324 B.R. 208, 214 (Bankr.W.D.N.Y. 2005); *see also In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) (acknowledging the "doctrine of necessity," and noting that cases have permitted unequal treatment of prepetition debts when necessary for rehabilitation, including specifically within the context of prepetition wages); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y.1989) (approving payment of prepetition wages to current employees where it was necessary to pay such claims "in order to preserve and protect their business and ultimately reorganize, retain their currently working employees and maintain positive employee morale"); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (approving the payment of certain prepetition wages, health insurance premiums, life insurance premiums, and workers' compensation premiums).

With respect to payroll taxes, in particular, the payment of such taxes will not prejudice

---

[1] Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate ... " 11 U.S.C. § 363(b)(1). Section 507(a)(4) of the Bankruptcy Code provides a fourth priority claim for "allowed unsecured claims, but only to the extent of $12,475 for each individual ... earned within 180 days before the date of filing of the petition ... for - (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; ... " 11 U.S.C. § 507(a)(4). Section 507(a)(5) of the Bankruptcy Code includes "allowed unsecured claims for contributions to an employee benefit plan - (A) arising from services rendered within 180 days before the date of the filing of the petition ... but only (B) to the extent of - (i) the number of employees covered by each such plan multiplied by $12,475; less (ii) the aggregate amount paid to such employees [for wages], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan" as a fifth priority claim. 11 U.S.C. § 507(a)(5).

general unsecured creditors of Debtor's Estate as the relevant taxing authorities would generally hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to such obligations. Additionally, the portion of the payroll taxes withheld from Employees' wages, on behalf of the applicable taxing authority, is held in trust by Debtor. As such, these payroll taxes are not property of the estate under section 541 of the Bankruptcy Code. *See e.g. Beiger v. IRS*, 496 U.S. 53 (1990). Based on the foregoing, the Debtor requests this Court's authority to pay (1) all pre-petition Salary Obligations (including payroll taxes) and Employee Benefits and (2) all post-petition Salary Obligations (including payroll taxes) and Employee Benefits as they become due, payable in the ordinary course of business.

## V.    NOTICE REQUIREMENTS

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to Debtor's operations if Debtor cannot pay its Employees, a fourteen-day stay of the relief sought herein is impractical. Accordingly, Debtor requests that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

Bankruptcy Rule 6003(b) provides "except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding ... a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition…" As described herein and in the Dunn Declaration, if the outstanding Employee Obligations and Critical Vendor obligations are not immediately satisfied, Debtor will experience immediate and irreparable harm. To ensure Debtor's chances of successfully reorganizing and maximizing value for its creditors, this Court should find that the exception set forth in Bankruptcy Rule 6003 applies here.

Given the emergency nature of the relief requested herein, and the potential disruption to Debtor's business that will ensue if such relief requested is not granted, Debtor submits that

no further notice need be given prior to granting the relief sought herein. No previous motion for the relief sought herein has been made to this or any other court.

## VI. CONCLUSION

Based on the foregoing, Debtor respectfully requests that its Motion be granted and that the notice requirements set forth in FRBP 6003 and 6004 be waived.

DATED this 10th day of June, 2014.

MCDONALD CARANO WILSON LLP

By: /s/ Ryan J. Works
RYAN J. WORKS (NV Bar No. 9224)
AMANDA M. PERACH (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com
*Proposed Counsel for TEM Enterprises*

# EXHIBIT 1

MCDONALD CARANO WILSON LLP
Ryan J. Works, Esq. (NV Bar No. 9224)
Amanda M. Perach, Esq. (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone Number: (702) 873-4100
Facsimile Number: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Proposed Counsel for TEM Enterprises*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 14-13955-abl |
| TEM ENTERPRISES, | Chapter 11 |
| Debtor in Possession. | **[PROPOSED] ORDER GRANTING EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING DEBTOR TO PAY EMPLOYEE WAGES, SALARIES, BENEFITS, REIMBURSABLE BUSINESS EXPENSES AND OTHER EMPLOYEE OBLIGATIONS; AND (II) AUTHORIZING PAYMENT OF CERTAIN CRITICAL VENDORS**<br><br>**Hearing Date:**<br>**Hearing Time:**<br><br>**Hearing Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101** |

TEM ENTERPRISES d/b/a/ XTRA AIRWAYS ("Debtor" or "Debtor in Possession"), having filed its Motion for Order: (1) authorizing, but not directing Debtor to pay certain employee salaries and benefits, and (2) authorizing but not directing Debtor to pay certain critical vendors (the "Motion") [Docket No. __]; the Motion having come on for hearing before the above-captioned Court, and Debtor appeared by and through its proposed counsel, the law firm of McDonald Carano Wilson, LLP, and all other appearances were noted on the record; the Court reviewed the Motion and the other pleadings on file and heard and considered the argument of counsel; the Court stated its findings of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); it appearing that the relief requested is necessary to preserve Debtor's ongoing operations and to avoid immediate and irreparable harm, and is in the best interests of the Debtor, its estate, and its creditors; and in the light of the circumstances and the emergency nature of the relief requested; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1. The Motion is GRANTED.

2. Debtor, in its sole discretion, is hereby authorized, but not required: (i) to pay Salary Obligations to its Employees; (ii) to pay Employee Benefits; (iii) to pay all costs incident to Salary Obligations such as payroll-related taxes and processing costs; and (iv) to reimburse Employees for Reimbursable Business Expenses all in accordance with the existing policies with respect thereto; provided, however, that payment of Salary Obligations shall not exceed the statutory cap of $12,475 per Employee.

3. Debtor, in its sole discretion, is hereby authorized, but not required to pay Critical Vendors, as defined in the Motion, all in accordance with the existing agreements with respect thereto.

4. The payments authorized by this order are not exempt from subsequent operation of Sections 547, 548, 549 and 550 of the Bankruptcy Code.

5. To the extent the payments authorized by this order apply to any payments made from cash collateral after the date of the entry of this Order, said payments are subject to the provisions set forth in the Interim Cash Collateral Order [Docket No. __].

6. Debtor is excepted from the operation of Bankruptcy Rule 6003(b). Any stay pursuant to Bankruptcy Rule 6004(h) or otherwise is hereby waived, and this order shall be effective immediately.

**IT IS SO ORDERED.**

###

In accordance with LR 9021, counsel submitting this **ORDER GRANTING EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING DEBTOR TO PAY EMPLOYEE WAGES, SALARIES, BENEFITS, REIMBURSABLE BUSINESS EXPENSES AND OTHER EMPLOYEE OBLIGATIONS; AND (II) AUTHORIZING PAYMENT OF CERTAIN CRITICAL VENDORS** certifies that the order accurately reflects the court's ruling and that (check one):

☐ The Court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

Submitted by:

MCDONALD CARANO WILSON LLP

By: /s/ Ryan J. Works
 Ryan J. Works, Esq., #9224
 Amanda M. Perach, Esq., #12399
 2300 West Sahara Avenue, Suite 1200
 Las Vegas, Nevada 89102
 rworks@mcdonaldcarano.com
 aperach@mcdonaldcarano.com
 *Proposed Counsel to the Debtor and Debtor in Possession*

Page 4 of 4