1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical text)* McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD CARANO WILSON LLP          *Electronically Filed June 16, 2014*
RYAN J. WORKS, NV Bar No. 9224
AMANDA M. PERACH, NV Bar No. 12399
2300 West Sahara Avenue, 12th Floor
Las Vegas, NV  89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com
*Proposed Counsel for TEM Enterprises*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.:  14-13955-ABL |
| TEM ENTERPRISES, | Chapter 11 |
| Debtor in Possession. | **JOINT STIPULATION AND AGREED ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363** |

TEM ENTERPRISES d/b/a/ XTRA AIRWAYS ("Debtor" or "Debtor in Possession"),

and the Vx Entities (as defined below), including V31-A&E LLC (the "Lender"), the secured

creditor as to the Collateral (as defined below) hereby stipulate and agree as follows:

A. <u>Background Information</u>.  On June 4, 2014 (the "<u>Petition Date</u>"), the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code.  Since that date, the Debtor has remained in possession of its property and operated its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B. <u>Cash Collateral Stipulation</u>.  This Joint Stipulation and Agreed Order Authorizing Debtor To Use Cash Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 (this "<u>Cash Collateral Order</u>") seeks immediate authorization to use the Lender's cash collateral as such term is defined in 11 U.S.C. § 363(a), in order to meet the Debtor's ordinary operating expenses, including: the payment of aircraft lease rents, maintenance costs, payroll, and other general administrative expenses.  The Debtor's counsel served a copy of this Cash Collateral Order, pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, on (a) the United States Trustee; (b) the 20 largest unsecured creditors of the Debtor; (c) parties in interest who have filed a notice of appearance in this case; and (d) other secured parties.  The Debtor and the Lender, together with the Vx Entities, reached agreement on the terms of this Cash Collateral Order, as set forth below.  The authorizations contained in this Cash Collateral Order were negotiated at arm's length, for reasonably equivalent value, and are fair and reasonable under the circumstances and enforceable in accordance with their terms.  The Debtor's operation of its business requires that it have the use of the Lender's Cash Collateral under the terms hereof to preserve the assets of its estate, and to enable its operations to continue.  The parties hereto have acted in good faith in connection with this Cash Collateral Order.

C. <u>Stipulations of Debtor</u>.  The Debtor stipulates and agrees to the summary of lease and financing transactions between the Debtor and Vx Capital Partners, LLC, which is (1) an authorized representative for the Owner Participant in the 25109 Lease, (2) an affiliate of the 25729 Lessor, (3) an affiliate of the 726322 Owner, (4) an affiliate of the 857562 Owner, and (5) an affiliate of Lender (collectively, items 1 through 5 shall be referred to as the "<u>Vx Entities</u>"), as more fully set forth below:

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

## I.  AIRCRAFT 25109

1.        On January 13, 2012, Wells Fargo Bank Northwest, National Association, not in its individual capacity, but solely as owner trustee (the "Owner Trustee"),[1] as lessor, and the Debtor, entered into that certain Aircraft Lease Agreement (MSN 25109) (as amended, modified, or supplemented, and together with all underlying documents, collectively, the "25109 Lease"), with respect to one (1) Boeing Model 737-400 aircraft bearing Manufacturer's Serial Number 25109 and U.S. Registration Number N416BC (the "Airframe"), together with two CFM International, Inc. model CFM56-3C1 engines with Engine Serial Numbers 857892 and 856773 (the "Engines" and along with the Parts,[2] the Airframe, and the Aircraft Documents (as defined in the Lease to be the documents, data and records, listed in the Certificate of Delivery Condition signed by Owner Trustee and Debtor at the time of Delivery, and all additions, renewals, revisions, and replacements from time to time made in accordance with the 25109 Lease, together with any logos on the Airframe), the "Aircraft").

2.        Pursuant to Section 3.1 and Exhibit C of the 25109 Lease, Debtor is required to pay to Owner Trustee, Basic Rent for each Basic Rent Period during the Lease Term, in each case, on or before each Basic Rent Payment Date.  Pursuant to Section 13.1 of the 25109 Lease, during the Lease Term, Debtor is required to pay to Owner Trustee, monthly Overhaul Payments, on or before the 15th day of each month for the month previously ended.

3.        Over a period of approximately [14] months, and notwithstanding Owner Trustee's demand for payment thereof, Debtor failed to timely pay to Owner Trustee, Basic Rent and Overhaul Payments, plus interest due thereon at the Past Due Rate in accordance with the terms of the 25109 Lease, which Basic Rent, Overhaul Payments, and accrued, unpaid interest were in an aggregate amount of $1,769,659.83 as of May 29, 2014, which constituted various Events of Default under the 25109 Lease.

4.        Owner Trustee provided Debtor written notices of Events of Default in June, 2013, and May, 2014, thereby evidencing Debtor's continued failures to timely meet its obligations under the 25109 Lease.  Owner Participant, as authorized representative of Owner Trustee, also provided Debtor a written notice of Events of Default in May, 2014.

5.        Based on the foregoing Events of Default, (a) Owner Participant sent to Debtor on May 28, 2014, a Notice of Events of Default Under the Lease, Termination of Lease of Aircraft, Demand For Immediate Payment and Return of Aircraft, and Reservation of Rights and Remedies (the "May 28, 2014 Termination Notice"), and (b) Owner Trustee sent to Debtor on May 29, 2014, a certain Notice of Events of Default and Termination of Lease of Aircraft (With Continuing Obligations of Debtor To Satisfy Remaining Obligations Under Lease) for Failure to Pay Basic Rent and Overhaul Payments; Demand for Redelivery and Payment of Outstanding Amounts (the "May 29, 2014 Termination Notice", and together with the May 28,

---

[1] Owner Trustee is the Owner Trustee under that certain Trust Agreement (MSN 25109 Trust), dated as of November 21, 2011 (the "25109 Trust Agreement"), between Owner Trustee, as owner trustee, and V43X-737 LLC, as trustor (in such capacity, "Owner Participant"), relating to the Aircraft (as defined in the 25109 Lease) and establishing the MSN 25109 Trust (the "25109 Trust").

[2] Capitalized terms used in paragraphs 1 through 8 but not otherwise defined therein shall have the meanings set forth in the 25109 Lease.

2014 Termination Notice, the "Termination Notices"). Pursuant to the Termination Notices, Owner Trustee terminated the Debtor's right to lease the Aircraft under the 25109 Lease, effective as of May 28, 2014.

6. Owner Participant, as authorized representative of Owner Trustee, and Owner Trustee, respectively, have made demand upon the Debtor to not only make the outstanding payments due and payable under the 25109 Lease, but have made demand for (a) redelivery of any and all Parts, Records, and all other documents relating to the Aircraft in Debtor's possession or control, in each case, to Owner Trustee, in the condition required by Section 21.3 of the Lease and Exhibit F to the 25109 Lease, and (b) the execution and delivery to Owner Trustee, of a Return Acceptance Certificate in connection therewith.

7. As of the Petition Date, the total amount owed by Debtor to Owner Trustee under the 25109 Lease is $1,560,609.03 (after application of security deposits held by Owner Trustee), plus any further Basic Rent and Overhaul Payments due for the remaining term of the 25109 Lease and attorneys' fees, costs of collection and other administrative and recovery expenses for which Debtor remains obligated as an unsecured claim, even after Owner Trustee has terminated the lease of the Aircraft.

8. As adequate protection of Owner Trustee's interest in the Aircraft, the Debtor shall comply with its "return and surrender" obligations under Section 1110 of the Bankruptcy Code and shall fully cooperate with the requirements and covenants of the Debtor under the 25109 Lease to effect (a) the complete turnover of all Parts, Records, and all other documents relating to the Aircraft in Debtor's possession or control, and (b) the execution and delivery of a Return Acceptance Certificate and FAA Lease Termination, in each case, to Owner Trustee.

## II. AIRCRAFT 25729

1. On December 22, 2010, V37X-737 LLC, as lessor ("25729 Lessor"), and Debtor, entered into that certain Aircraft Lease Agreement (as amended, modified, or supplemented, and together with all underlying documents, collectively, the "25729 Lease"), with respect to one (1) Boeing Model 737-400 aircraft bearing Manufacturer's Serial Number 25729 and U.S. Registration Number N42XA (the "Airframe"), together with two CFM International, Inc. model CFM56-3C1 engines with Engine Serial Numbers 725625 and 727216 (the "Engines" and along with the Parts,[3] the Airframe, and the Aircraft Documents (as defined in the Lease to be the documents, data and records, listed in the Certificate of Delivery Condition signed by 25729 Lessor and Debtor at the time of Delivery, and all additions, renewals, revisions, and replacements from time to time made in accordance with the 25729 Lease, together with any logos on the Airframe), the "Aircraft").

2. Pursuant to Section 3.1 and Exhibit C of the 25729 Lease, Debtor is required to pay to 25729 Lessor, Basic Rent for each Basic Rent Period during the Lease Term, in each case, on or before each Basic Rent Payment Date. Pursuant to Section 13.1 of the 25729 Lease, during the Lease Term, Debtor is required to pay to 25729 Lessor, monthly Overhaul Payments, on or before the 15th day of each month for the month previously ended.

[3] Capitalized terms used in paragraphs 1 through 8 but not otherwise defined therein shall have the meanings set forth in the 25729 Lease.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

3.      Over a period of approximately [14] months, and notwithstanding 25729 Lessor's demand for payment thereof, Debtor failed to timely pay to 25729 Lessor, Basic Rent and Overhaul Payments, plus interest due thereon at the Past Due Rate in accordance with the terms of the 25729 Lease, which Basic Rent, Overhaul Payments, and accrued, unpaid interest were in an aggregate amount of $1,120,272.81 as of May 29, 2014, which constituted various Events of Default under the 25729 Lease.

4.      25729 Lessor provided Debtor written notices of Events of Default in June, 2013, and May, 2014, thereby evidencing Debtor's continued failures to timely meet its obligations under the 25729 Lease.

5.      Based on the foregoing Events of Default, 25729 Lessor sent to Debtor (a) on May 28, 2014, a Notice of Events of Default Under the Lease, Termination of Lease of Aircraft, Demand For Immediate Payment and Return of Aircraft, and Reservation of Rights and Remedies (the "May 28, 2014 Termination Notice"), and (b) on May 29, 2014, a certain Notice of Events of Default and Termination of Lease of Aircraft (With Continuing Obligations of Debtor To Satisfy Remaining Obligations Under Lease) for Failure to Pay Basic Rent and Overhaul Payments; Demand for Redelivery and Payment of Outstanding Amounts (the "May 29, 2014 Termination Notice", and together with the May 28, 2014 Termination Notice, the "Termination Notices").  Pursuant to the Termination Notices, 25729 Lessor terminated the Debtor's right to lease the Aircraft under the 25729 Lease, effective as of May 28, 2014.

6.      25729 Lessor has made demand upon the Debtor to not only make the outstanding payments due and payable under the 25729 Lease, but has made demand for (a) redelivery of the Aircraft (including, without limitation, the Parts, Records, and all other documents relating to the Aircraft in Debtor's possession or control), in the condition required by Section 21.3 of the Lease and Exhibit F to the 25729 Lease, and (B) execution and delivery, a Return Acceptance Certificate in connection therewith, in each case, to 25729 Lessor.

7.      As of the Petition Date, the total amount owed by Debtor to 25729 Lessor under the 25729 Lease is $899,157.05 (after application of security deposits held by 25729 Lessor), plus any further Basic Rent and Overhaul Payments due for the remaining term of the 25729 Lease and attorneys' fees, costs of collection and other administrative and recovery expenses for which Debtor remains obligated as an unsecured claim, even after 25729 Lessor has terminated the leasing of the Aircraft.

8.      As adequate protection of 25729 Lessor's interest in the Aircraft, the Debtor shall comply with its "return and surrender" obligations under Section 1110 of the Bankruptcy Code and shall fully cooperate with the requirements and covenants of the Debtor under the 25729 Lease to effect (a) the complete turnover of the Aircraft (including, without limitation, the Parts, Records, and all other documents relating to the Aircraft in Debtor's possession or control), and (b) the execution and delivery of a Return Acceptance Certificate and FAA Lease Termination, in each case, to 25729 Lessor.

9.      25729 Lessor has agreed to provide credit to the Debtor, in the approximate amount of $40,000, to fund the fuel costs necessary for the Debtor to comply with its post-petition return and surrender requirements under Section 1110 of the Bankruptcy Code. Accordingly, by this Cash Collateral Order, the 25729 Lessor shall be deemed to have a super-priority administrative claim in the amount of the advance necessary to pay for such fuel, in the

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

approximate amount of $40,000, together with interest accruing thereon at the rate of 15% per annum, until paid.  The Debtor shall satisfy such obligation owing to 25729 Lessor, with two (2) equal installments on July 31, 2014 and August 30, 2014, which shall be reflected in the Approved Budget (as defined below) and wire transferred to the attention of Vx Capital Partners, LLC, in accordance with the existing wiring instructions.  As soon as reasonably practical, 25729 Lessor shall provide to the Debtor's counsel, appropriate documentation evidencing the calculation of the fuel claim referenced above.

## III.  ENGINE 726322

1.    Prior to the Petition Date, V48R-737X5 LLC ("726322 Owner"), and the Debtor had been in discussions for the lease by 726322 Owner to Debtor of one (1) CFM International, Inc. model CFM56-3C1 Aircraft Engine with Engine Serial Number 726322 (the "726322 Used Engine" and along with the associated parts and associated aircraft documents with respect thereto, the "726322 Used Engine").

2.    In connection with such discussions, and in anticipation of reaching a definitive written agreement with respect to the lease thereof, 726322 Owner permitted Debtor to use the 726322 Used Engine in one or more of Debtor's airplanes for a period of at least 18 days.

3.    Despite their efforts to reach an agreement with respect thereto, no written lease or other agreement with respect to the 726322 Used Engine was entered into by 726322 Owner and Debtor.  Based on that fact, and the fact that Debtor had been using the 726322 Used Engine for at least 18 days without remitting any payment or other consideration to 726322 Owner for the use thereof, 726322 Owner sent to Debtor (a) on May 28, 2014, an e-mail (the "May 28, 2014 Redelivery Notice"), and (b) on May 29, 2014, a certain Notice of Demand for Redelivery and Payment of Outstanding Amounts (the "May 29, 2014 Redelivery Notice", and together with the May 28, 2014 Redelivery Notice, the "Redelivery Notices".  Pursuant to the Redelivery Notices, 726322 Owner terminated the Debtor's right to use the 726322 Used Engine, effective as of May 28, 2014.

4.    726322 Owner has made demand upon the Debtor to not only make the appropriate usage payments due 726322 Owner for the use of the 726322 Used Engine, but has made demand upon Debtor to (a) redeliver the 726322 Used Engine (including, without limitation, all associated parts, records, and all other documents relating to the 726322 Used Engine in Debtor's possession or control) to 726322 Owner, in the condition as existed prior to the use of the 726322 Used Engine by the Debtor, and (b) execute and deliver to 726322 Owner, a Return Acceptance Certificate in connection therewith.

5.    726322 Owner and the Debtor have agreed that based on the $13,000 per month usage rate for the 726322 Used Engine that was previously under discussion by 726322 Owner and Debtor, as of the Petition Date, the aggregate use charges[4] owed by Debtor to 726322 Owner with respect to the 726322 Used Engine are $7,800.00, plus the Additional Use Charges with respect to recovering or restoring the 726322 Used Engine.

---

[4] 726322 Owner is also asserting a $201.91/flight hour and a $117.89/flight cycle usage charges, as further modified by a schedule of surcharges for excessive use measured over and above a straight hourly or cycle use (the "Additional Use Charges") for the 726322 Used Engine and the 857562 Used Engine (as defined below), which can only be determined after the Debtor provides such relevant information to 726322 Owner or the 857562 Owner, as applicable.

6.      After the Petition Date, 726322 Owner shall be entitled to a per diem of $433.33 for each day that Debtor continues to utilize the 726322 Used Engine, plus the Additional Use Charges based on the number of flight hours and flight cycles in which the 726322 Used Engine is used.  Debtor's right to continue to use the 726322 Used Engine under the terms and conditions set forth above shall continue until the earlier of (a) the date upon which 726322 Owner makes demand for return therefor, upon 726322 Owner, and (b) the effective date of any post-petition written lease agreement entered into by 726322 Owner and Debtor with respect to the 726322 Used Engine, as approved by the Court.  Upon any written demand by 726322 Owner to the Debtor for the immediate return of the 726322 Used Engine (at the election of the 726322 Owner, in its sole discretion, including, without limitation, for non-payment), the automatic stay shall be deemed lifted and terminated with respect to the 726322 Used Engine, without further action or subsequent order of this Court, and the Debtor shall deliver and return the 726322 Used Engine (together with any other parts, accessories, and documents with respect thereto in Debtor's possession or control) to the 726322 Owner, and execute and deliver to 726322 Owner, a Return Acceptance Certificate in connection therewith in each case, within two (2) business days after delivery of such notice.  The Approved Budget shall include a line item for the payment to the 726322 Owner of the monthly use charge of $13,433.23, together with an Additional Use Charge of not less than $40,000 (subject to adjustment upon execution of further documentation), each charge prorated from and after the Petition Date, which shall be paid by the Debtor to the 726322 Owner, to the attention of Vx Capital Partners, LLC in accordance with the existing wiring instructions.  Accordingly, the Approved Budget shall provide for the payment to the 726322 Owner of (i) the foregoing use charge for the month of June, 2014, on or before the date that is three (3) days after the entry of this Cash Collateral Order, and, (ii) the foregoing Additional Use Charge for the month of June, 2014, on or before July 15, 2014, and thereafter, each subsequent monthly payment to the 726322 Owner of the foregoing use charge and the Additional Use Charge shall be paid as follows: (x) one-half of such use charge and the Additional Use Charge shall be paid to 726322 Owner on the third (3rd) day of each calendar month, and (y) one-half of such use charge and the Additional Use Charge shall be paid to 726322 Owner on the eighteenth (18th) day of each calendar month (except with respect to the Additional Use Charge for the month of June, 2014, due and payable to 726322 Owner on or before July 15, 2014).

## IV.  ENGINE 857562

1.      Prior to the Petition Date, V47A-737X10 LLC ("857562 Owner"), and the Debtor had been in discussions for the lease by 857562 Owner to Debtor of one (1) CFM International, Inc. model CFM56-3C1 Aircraft Engine with Engine Serial Number 857562 (the "857562 Used Engine" and along with the associated parts and associated aircraft documents with respect thereto, the "857562 Used Engine").

2.      In connection with such discussions, and in anticipation of reaching a definitive written agreement with respect to the lease thereof, 857562 Owner permitted Debtor to use the 857562 Used Engine in one or more of Debtor's airplanes for a period of at least 18 days.

3.      Despite their efforts to reach an agreement with respect thereto, no written lease or other agreement with respect to the 857562 Used Engine was entered into by 857562 Owner and Debtor.  Based on that fact, and the fact that Debtor had been using the 857562 Used Engine for at least 18 days without remitting any payment or other consideration to 857562

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

Owner for the use thereof, 857562 Owner sent to Debtor (a) on May 28, 2014, an e-mail (the "May 28, 2014 Redelivery Notice"), and (b) on May 29, 2014, a certain Notice of Demand for Redelivery and Payment of Outstanding Amounts (the "May 29, 2014 Redelivery Notice", and together with the May 28, 2014 Redelivery Notice, the "Redelivery Notices". Pursuant to the Redelivery Notices, 857562 Owner terminated the Debtor's right to use the 857562 Used Engine, effective as of May 28, 2014.

4.     857562 Owner has made demand upon the Debtor to not only make the appropriate usage payments due 857562 Owner for the use of the 857562 Used Engine, but has made demand upon Debtor to (a) redeliver the 857562 Used Engine (including, without limitation, all associated parts, records, and all other documents relating to the 857562 Used Engine in Debtor's possession or control) to 857562 Owner, in the condition as existed prior to the use of the 857562 Used Engine by the Debtor, and (b) execute and deliver to 857562 Owner, a Return Acceptance Certificate in connection therewith.

5.     857562 Owner and the Debtor have agreed that based on the $13,000 per month rental rate set forth in the draft lease agreement for the 857562 Used Engine that was previously under discussion by 857562 Owner and Debtor, as of the Petition Date, the Additional Use Charges owed by Debtor to 857562 Owner with respect to the 857562 Used Engine are $7,800.00, plus the Additional Use Charges.

6.     After the Petition Date, 857562 Owner shall be entitled to a per diem of $433.33 for each day that Debtor continues to utilize the 857562 Used Engine, plus the Additional Use Charges based on the number of flight hours and flight cycles in which the 857562 Used Engine is used. Debtor's right to continue to use the 857562 Used Engine under the terms and conditions set forth above shall continue until the earlier of (a) the date upon which 857562 Owner makes demand for return therefor, upon 857562 Owner, and (b) the effective date of any post-petition written lease agreement entered into by 857562 Owner and Debtor with respect to the 857562 Used Engine, as approved by the Court. Upon any written demand by 857562 Owner to the Debtor for the immediate return of the 857562 Used Engine (at the election of the 857562 Owner, in its sole discretion, including, without limitation, for non-payment), the automatic stay shall be deemed lifted and terminated with respect to the 857562 Used Engine, without further action or subsequent order of this Court, and the Debtor shall deliver and return the 857562 Used Engine (together with any other parts, accessories, and documents with respect thereto in Debtor's possession or control) to the 857562 Owner, and execute and deliver to 857562 Owner, a Return Acceptance Certificate in connection therewith, in each case, within two (2) business days after delivery of such notice. The Approved Budget shall include a line item for the payment to the 857562 Owner of the monthly use charge of $13,433.23 together with an Additional Use Charge of not less than $40,000 (subject to adjustment upon execution of further documentation), each charge prorated from and after the Petition Date, which shall be paid by the Debtor to the 857562 Owner, to the attention of Vx Capital Partners, LLC in accordance with the existing wiring instructions. Accordingly, the Approved Budget shall provide for the payment to the 857562 Owner of (i) the foregoing use charge for the month of June, 2014, on or before the date that is three (3) days after the entry of this Cash Collateral Order, and (ii) the foregoing Additional Use Charge for the month of June, 2014, on or before July 31, 2014, and thereafter, each subsequent monthly payment to the 857562 Owner of the foregoing use charge and the Additional Use Charge shall be paid as follows: (x) one-half of such use charge and the Additional Use Charge shall be paid to 857562 Owner on the third (3rd)

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

day of each calendar month, and (y) one-half of such use charge and the Additional Use Charge shall be paid to 857562 Owner on the eighteenth (18th) day of each calendar month (except with respect to the Additional Use Charge for the month of June, 2014, due and payable to 857562 Owner on or before July 31, 2014).

## V.  ENGINE 726132

1.     On August 10, 2011, the Debtor: (a) executed and delivered to Lender, that certain Secured Promissory Note (the "Note"), in the original principal amount of $602,619.00, and (b) entered into that certain Engine Mortgage and Security Agreement (ESN 726312), between Debtor and Lender (as amended by that certain Security Agreement (ESN 726312) Supplement No. 1, dated August 10, 2011, the "Security Agreement", and together with the 25109 Lease, the 25729 Lease, the oral arrangements by which the 726322 Used Engine and the 857562 Used Engine were used, and the Note, the "Loan and Lease Documents")).

2.     Pursuant to the Note, Debtor was required to make, among other payments, principal and interest payments in such amounts, and on such dates, as more fully set forth on the Schedule to the Note.

3.     Pursuant to the terms and conditions of the Security Agreement, Debtor granted to Lender a first-priority security interest in, and lien on, all assets of the Debtor (collectively, the "Collateral"), in order to secure the Secured Obligations[5], including, without limitation, the Engine, any and all Parts which are from time to time included within the definition of "Engine" and all additions, improvements, accessions and accumulations to the Engine and any and all Parts and all substitutions and replacements of any and all Parts, all Engine Documents, and all renewals, substitutions, replacements, additions, improvements, accessories, accessions and accumulations with respect to any of the foregoing to the extent permitted thereunder, all Warranty Rights, insurance proceeds, service contracts, product agreements, repair, maintenance, and overhaul agreements in respect of the Engine or any Part, and all accounts, goods, inventory, equipment, general intangibles, documents, promissory notes and other instruments, chattel paper (both electronic and tangible), investment property, deposit accounts, commercial tort claims, letters of credit, letter of credit rights and contract rights of the Debtor, and all proceeds of the foregoing.

4.     Lender properly perfected its security interest in, and lien on, the Collateral, by filing (a) a UCC-1 Financing Statement naming Lender, as secured party, and Debtor, as debtor, with the Nevada Secretary of State on August 11, 2011, as filing number 2011021300-6, (b) a registration with The International Registry for International Interests In Mobile Equipment (Aircraft Equipment) on August 10, 2011, as registration number 763968, and (c) the Security Agreement with the Federal Aviation Administration, on August 31, 2011, as document number SG006125.

5.     Debtor has breached the terms of the Note and Security Agreement by reason of the Debtor's failure to pay to the Lender the full amount of the indebtedness due and owing thereunder, on or before February 10, 2012, the maturity date of the Note.  The full

---

[5] Capitalized terms used in paragraphs 1 through 9 but not otherwise defined therein shall have the meanings set forth in the Security Agreement.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

amount of the indebtedness owing under the Note in accordance with the terms of the Note, was in an aggregate amount of approximately $163,148.36 as of May 29, 2014.

6.      Lender provided Debtor written notices of Events of Default in June, 2013, and May, 2014, thereby evidencing Debtor's continued failures to timely meet its obligations under the Note.

7.      Based on the foregoing Event of Default, Lender sent to Debtor on May 29, 2014, a certain Notice of (i) Event of Default; (ii) Demand For Immediate Payment of All Indebtedness; (iii) Demand For Immediate Turnover of Engine, Parts, and Engine Documents; (iv) Objection to Use of Cash Collateral; and (v) Notice of Reservation of Rights and Remedies (the "May 29, 2014 Demand Notice").

8.      Lender has made demand upon Debtor to not only make the outstanding payment due and payable to Lender under the Note, but has made demand upon Debtor to (a) deliver to Lender the possession and control of the Engine, Parts, and Engine Documents; and (b) immediately take all steps necessary to enable Lender to take possession or control of the Engine, Parts, and Engine Documents.  As adequate protection of the Lender's interests in the Engine, Parts, and Engine Documents, and given the fact that the Debtor is not using such equipment and it is unnecessary in its operations, the Debtor shall forthwith return and deliver possession of the Engine, Parts, and Engine Documents to the Lender, and cooperate fully in executing and delivering to Lender all documents in connection with same.  Given that the Approved Budget attached hereto presently does not show sufficient cash flow for the Debtor to make, from and after the Petition Date, adequate protection payments to Lender in the amount of $5,000 per week, and of not less than $20,000 per month, the Debtor shall make such payments to Lender in the first month that the Debtor has sufficient cash flow to make such payments. Specifically, the Approved Budget shall provide that, beginning in August, 2014, Debtor shall make adequate protection payments of $5,000 per week, and of not less than $20,000 per month, to Lender, for the period beginning on the Petition Date, through the date the Pre-Petition Vx Loan Debt (as defined below) is paid in full; provided, that for purposes of clarity, the first of such payments made by Debtor to Lender shall be made on August 3, 2014. For the months of June, 2014 and July, 2014,  Debtor shall make adequate protection payments on the Vx Loan Debt from its ending cash balance in excess of $50,000.  For the avoidance of doubt, and as an example, if the Debtor has available cash of $60,000 at the end of August 2014, it shall pay $10,000 toward the June 2014 and July 2014 $5,000 per week adequate protection arrearages.

9.      The total amount owed by Debtor to Lender under the Note is $163,604.29 as of the Petition Date, together with accrued but unpaid interest on and after May 29, 2014, and attorneys' fees, costs of collection and other administrative and recovery expenses for which Debtor remains obligated the ("Pre-Petition Vx Loan Debt", and together with the Pre-Petition Vx Lease Obligations, the "Pre-Petition Vx Obligations").

D.      Need for Financing. An immediate need exists for the Debtor to obtain financing and use the cash proceeds of the Collateral (as defined below) (the "Cash Collateral") to continue the operation of its business as Debtor-in-Possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption of the Debtor's business.

1        E.      Approved Budget.  Subject to the terms and conditions herein and pursuant to

2  Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtor requests that the Court authorize the Debtor

3  to use Cash Collateral as hereinafter set forth (as at any time amended with the written consent of

4  the Lender, the "Approved Budget").  *See* Exhibit 1.  The Approved Budget shall be the guide

5  governing how much Cash Collateral the Debtor shall be allowed to use and the timing of such

6  use.  The Debtor has submitted to the Lender, and the Lender has approved, a cash forecast and

7  operating budget, subject to Paragraph 10 of this Cash Collateral Order covering the period (the

8  "Budget Period") from June 4, 2014, through July 31, 2014, setting forth projected cash receipts

9  and disbursements for the respective periods indicated thereon.  Notwithstanding the term of the

10  Approved Budget attached as Exhibit "1" hereto, the Lender only consents to the disbursements

11  set forth therein (subject to Paragraph 12 of this Cash Collateral Order) and actually incurred

12  during the period from June 4, 2014, through July 31, 2014, unless otherwise extended pursuant

13  to the terms of Paragraph 12 below.  The Debtor shall provide to the Lender, on a weekly basis

14  and no later than two (2) business days following the end of each Weekly Period (as defined

15  below), a schedule in substantially the same form as the Approved Budget, reflecting actual cash

16  receipts and disbursements and projected sales and actual sales for the prior Weekly Period.  The

17  Lender's consent to use of its Cash Collateral and its right to exercise its rights and remedies

18  shall both be subject to Paragraph 10 below.  As used herein, "Weekly Period" shall mean (i)

19  initially, the period from June 4, 2014, through June 8, 2014, and (ii) thereafter, each succeeding

20  one-week period beginning on a Monday and ending on a Sunday.  Three (3) business days prior

21  to the expiration of the then Approved Budget, the Debtor shall submit to the Lender and its

22  counsel a proposed monthly budget for the following thirty (30) day period, and the Lender shall

23  have two (2) business days thereafter to approve or reject such proposed monthly budget in

24  writing.  In the absence of such approval, the Debtor shall file a Cash Collateral Stipulation with

25  the Court to seek continued use of Cash Collateral from and after the expiration of the then

26  Approved Budget.  Lender consents to the Debtor's (together with its professionals, and any

27  other professionals, retained by the estate) use of Cash Collateral, consistent with the amounts set

28  forth in the Approved Budget, provided, however, that the Debtor (nor its professionals, nor any

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

other professionals, retained by the estate) shall not be authorized to use Cash Collateral to oppose any of the Vx Entities' actions in these proceedings, object to claims of, or relief sought by, the Vx Entities, or otherwise seek to restructure the indebtedness or other obligations owed to the Vx Entities by the Debtor on a non-consensual basis, i.e. through cram-down; provided further, the Vx Entities reserve the right to object to the reasonableness of such fees and expenses.

F.     <u>Adequate Protection Payments</u>. As set forth in the Approved Budget, Debtor will deliver all adequate protection payments to the Lender, as delineated on the Approved Budget, wire transferred to Vx Capital Partners, LLC, using the existing wiring instructions, on or before the close of business on 15th day of each month throughout the term of this Cash Collateral Order, payment in an amount consistent with the terms of the Note.

G.     <u>11 U.S.C. §§ 361 and 363(e) Replacement Liens</u>. As adequate protection pursuant to 11 U.S.C. §§ 361 and 363(e) in connection with any possible diminution in the value of the Collateral, including diminution from the use of the Lender's Cash Collateral, both those amounts set forth in the Approved Budget and as authorized by the Lender pursuant to its consent prior to the entry of this Cash Collateral Order, the Lender shall have and is hereby granted, effective on and after the date of this Cash Collateral Order, valid and perfected continuing and replacement security interests in and liens upon all present or subsequently arising or acquired properties and assets of the Debtor and its bankruptcy estate, whether real or personal, and whether acquired prior to or after the Petition Date (collectively, the "<u>Additional Collateral</u>"); provided, however, the Additional Collateral shall include causes of action and proceeds thereof under Section 549 of the Bankruptcy Code, but shall not include other causes of action under Chapter 5 of the Bankruptcy Code. Notwithstanding anything to the contrary set forth above, the replacement security interests in and liens of the Bank upon the Additional Collateral shall not have priority over liens and security interests on the Debtor's assets existing as of the Petition Date (the "<u>Existing Liens</u>") or the fees owed to the U.S. Trustee's Office, so long as such liens are valid, perfected, and non-avoidable contractual liens in accordance with applicable law.

1       H.    <u>Perfection of Liens and Security Interests</u>.  This Cash Collateral Order shall be

2  sufficient and conclusive evidence of the priority, perfection and validity of all of the adequate

3  protection replacement security interests in and liens upon the property of the estate of the

4  Debtor granted to the Lender as set forth herein, and the adequate protection replacement liens

5  and security interests granted and created herein shall, by virtue of this Cash Collateral Order,

6  constitute valid and perfected security interests without the necessity of creating, filing,

7  recording, or serving any financing statements, continuation statements, or other documents that

8  might otherwise be required under federal or state law in any jurisdiction or the taking of any

9  other action to validate or perfect the security interests and liens granted to the Lender in this

10 Cash Collateral Order and the Security Agreement.  If the Lender shall, in its discretion, elect for

11 any reason to file any such financing statements, continuation statements, or other documents

12 with respect to such security interests and liens, the Debtor is authorized and directed to execute,

13 or cause to be executed, all such financing statements, continuation statements, or other

14 documents upon the Lender's reasonable request, and the filing, recording, or service thereof (as

15 the case may be) of such financing statements, continuation statements, or similar documents

16 shall be deemed to have been made at the time of and on the Petition Date, and the signature(s)

17 of any person(s) designated by the Debtor, whether by letter to the Lender or by appearing on

18 any one or more of the agreements or other documents respecting the security interest and lien of

19 the Lender in and upon the Collateral, shall bind the Debtor and its estate.

20      I.    <u>Reservation of Rights</u>.  Nothing contained herein shall preclude Lender from

21 making appropriate application or request to the Court for such other relief as shall be necessary

22 to protect adequately its interests, including, without limitation, moving the Court to lift the

23 automatic stay for "cause" as against the Debtor for any reason deemed appropriate by the Bank

24 and objecting to the Debtor's violation of the terms of this Cash Collateral Order and any use of

25 the Cash Collateral after the Budget Period (as defined below).

26      J.    <u>Finding Cause</u>. Good cause is shown for the entry of this Cash Collateral Order

27 and authorization for Debtor to use Cash Collateral pursuant to the terms herein and as

28 hereinafter provided.  The Debtor's need for use of cash collateral is immediate and critical.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702) 873-4100 • FAX (702) 873-9966

Entry of this Cash Collateral Order will minimize disruption of Debtor's operations, will preserve the assets of Debtor's estate and their value and is in the best interests of Debtor, its creditors and its estate. The terms of Debtor's use of Cash Collateral appear fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

K.     Jurisdiction; Core Proceeding. This Court has jurisdiction to enter this Cash Collateral Order pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

L.     Proof of Claim. The Vx Entities shall not be required to file a proof of claim in this Case with respect to the Pre-Petition Vx Obligations and the Collateral securing the repayment of the Pre-Petition Vx Loan Debt (including the adequate protection liens and priority claims granted to the Vx Entities under this Cash Collateral Order), and the entry of this Cash Collateral Order shall be sufficient and with respect to the filing of a proof of claim, shall be binding upon the Debtor, the Debtor's estate, and any subsequently appointed trustee in this case, with the same effect as if each of the Vx Entities filed a proof of claim in this case.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.     The Stipulation is hereby GRANTED on a final basis and the Court hereby authorizes and approves of the Debtor's use of the Cash Collateral in a manner consistent with the Approved Budget annexed hereto as Exhibit "1", but subject to the Debtor satisfying all conditions precedent and performing all obligations hereunder and in accordance with the terms hereof and for purposes specified in the Approved Budget but subject to modification with notification by the Debtor to Lender.  Appropriate notice and opportunity for hearing have been given for the Cash Collateral Stipulation in accordance with the provisions of §§ 361, 362 and 363 of the Bankruptcy Code.

2.     Stipulation and Order.  All terms, conditions and reservations contained in the Stipulation and Order are hereby incorporated into this Cash Collateral Order and made a part hereof.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702) 873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702) 873-4100 • FAX (702) 873-9966

3.    <u>Permitted Uses of Cash Collateral</u>.  Debtor shall be authorized to use Cash Collateral in such amounts and only for such purposes as set forth in the Approved Budget, subject to the occurrence of an Event of Default (as defined below), through the date which is sixty (60) days from the date that this Cash Collateral Order is entered by the Bankruptcy Court (the "<u>Cash Collateral Period</u>"), unless otherwise extended in writing.

4.    <u>Adequate Protection of Pre-Petition Creditors</u>.  This Cash Collateral Order constitutes adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for Debtor's use, consumption, sale, collection or other disposition of any of the Collateral (including the Cash Collateral).

5.    <u>Reservation of Rights</u>.  Nothing herein shall be deemed to be a waiver by the Vx Entities of its right to request additional or further protection of its interests, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the conversion or dismissal of this Chapter 11 case, or to request any other relief in this case.  Lender shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the Collateral, to the extent that the protection afforded by this Cash Collateral Order to Lender's interests in any Collateral proves to be inadequate.

6.    <u>Rights Upon Dismissal, Conversion or Consolidation</u>.  If this Chapter 11 case is dismissed, converted or substantively consolidated with another case, then neither the entry of this Cash Collateral Order nor the dismissal, conversion or substantive consolidation of this Chapter 11 case shall affect the rights or remedies of the Vx Entities under this Cash Collateral Order, and all of the respective rights and remedies of the Vx Entities shall remain in full force and effect as if this Chapter 11 case had not been dismissed, converted, or substantively consolidated.  It shall constitute an Event of Default if the Debtor seeks, or if there is entered, any order dismissing this Chapter 11 case.

7.    <u>Survival of Order</u>. The provisions of this Cash Collateral Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict

with any order that may be entered confirming any plan of reorganization or converting this Chapter 11 case to Chapter 7.

8.    No Discharge Under Plan.  The obligations of the Debtor pursuant to this Cash Collateral Order shall not be discharged by the entry of any order confirming a plan of reorganization in this Chapter 11 case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such discharge.

9.    No Section 506(c) Surcharges.  No operating costs or costs or expenses of administration that have been or may be incurred in the Debtor's Chapter 11 Case, or in any subsequent Chapter 7 case of the Debtor or other proceedings related hereto, shall be charged against the Vx Entities (or its claims, the Collateral or the Additional Collateral) pursuant to Section 506(c) of the Code or otherwise, without (i) the prior express written consent of the Vx Entities (and no such consent should be inferred from any other action, inaction, or acquiescence by the Vx Entities); or (ii) a subsequent Order of this Court upon appropriate motion, notice and opportunity for hearing.

10.    Events of Default.  In the event of the occurrence of any of the following:  (a) the Debtor's violation of any of the terms of this Cash Collateral Order, including, without limitation, the Debtor's exceeding the line items within the Approved Budget by ten percent (10%) negatively (except with respect to any payments due any of the Vx Entities in accordance with the Approved Budget, for which there shall be no permitted variance); (b) the termination of this Cash Collateral Order; (c) conversion of this Case to a case under Chapter 7 of the Code; (d) dismissal of this Case (any of the foregoing being referred to in this Cash Collateral Order, individually, as an "Event of Default" and, collectively, as "Events of Default"), then (unless such Event of Default is specifically waived in writing by the Vx Entities, which waiver shall not be inferred from any other action, inaction, or acquiescence by the Vx Entities) upon or after the occurrence of any of the foregoing, and at all times thereafter, after (i) giving three (3) business days' notice thereof, served by overnight delivery service or telefax upon the Debtor, the Debtor's counsel, counsel to the Creditors' Committee, any Trustee, if appointed, and the United States Trustee, and (ii) the Debtor having failed to cure the Event of Default, to the extent that the same

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

1   is curable, within such three (3) day period, the Debtor shall not use any of the Cash Collateral

2   without further order of the Court, which shall not issue until after notice and a hearing; and,

3   furthermore, the Debtor (and the Debtor's employees, agents, officers, and representatives) shall

4   cooperate in all respects with preserving the Collateral and the Additional Collateral and all

5   documents and records reasonably necessary to facilitate the sale or liquidation of the same,

6   pending further order of this Court, including orders lifting the automatic stay as to Lender, and

7   shall forthwith provide to the Bank a proposed ninety (90) day cash collateral budget to

8   maximize the value from the Collateral.  The Debtor stipulates that any subsequent adequate

9   protection given by this Court shall afford the Vx Entities no less adequate protection than that

10  contained in this Cash Collateral Order.  Notwithstanding the foregoing, the protections afforded

11  to the Vx Entities in this Cash Collateral Order shall survive the term of the Cash Collateral use

12  provided herein.

13          11.     Notwithstanding any such modification, vacation, or stay, any indebtedness,

14  obligations, or liabilities incurred by the Debtor to the Vx Entities before the effective date of

15  such modification, vacation, or stay shall be governed in all respects by the original provisions of

16  this Cash Collateral Order, and the Vx Entities shall be entitled to all the rights, remedies,

17  privileges, and benefits granted herein and pursuant to the Loan and Lease Documents with

18  respect to all such indebtedness, obligations, or liabilities.  If the Debtor (or its successors or

19  assigns) obtains financing from another lender with liens to be granted on a parity with, or

20  superior to, those liens and security interests of the Lender, the Debtor shall pay to the Lender

21  the outstanding amount of the Pre-Petition Vx Loan Debt as a condition to any such financing,

22  unless otherwise expressly agreed to in writing by the Lender. To the extent the protections

23  afforded herein should prove inadequate (i.e., the adequate protection provided herein fails), the

24  Vx Entities shall be entitled under § 507(b) of the Code to a super-priority administrative

25  expense claim under 11 U.S.C. § 503(b) and § 507(a)(1) and (b).

26          12.     Notwithstanding anything to the contrary stated herein, the Debtor's authority to

27  use the Lender's Cash Collateral shall continue from this date and automatically cease on the

28  earliest of the following dates (such period of Cash Collateral use shall be referred to as the

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

"Permitted Term"): (a) sixty (60) days from the date that this Cash Collateral Order is entered by the Court; (b) the date on which notice of an Event of Default becomes effective, unless the Vx Entities agree in writing to extend the term of this Cash Collateral Order; or (c) such expiration date provided under any extension of this Cash Collateral Order, pursuant to further budgets, subject to the written consent of the Vx Entities.  To the extent that the Vx Entities extend the term of this Cash Collateral Order, the Vx Entities shall be entitled to all the liens, priorities, benefits and protections in this Cash Collateral Order for such extended period.

13.    This Cash Collateral Order shall be effective upon entry onto the docket sheet of this Case.  There is cause to waive all appeal periods otherwise applicable, and this is Cash Collateral Order shall be immediately effective and binding upon the parties.

14.    Rights Cumulative. The rights, remedies, powers and privileges conferred upon the Vx Entities pursuant to this Cash Collateral Order shall be in addition to and cumulative with those contained in the Loan and Lease Documents.

15.    Modification of Automatic Stay.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to the Vx Entities to the extent necessary to implement the provisions of this Cash Collateral Order, including, without limitation, immediately upon the entry by the Court of this Cash Collateral Order with respect to the aircrafts (and all parts, engines, aircraft documents, and other records in Debtor's possession or control) subject to each of the 25109 Lease and the 25729 Lease.  As adequate protection of the Vx Entities' interests, upon the entry of this Cash Collateral Order the Debtor shall pay to the Vx Entities, as adequate protection payments and/or such other payments due the other Vx Entities hereunder, (i) each month the amount set forth on the Approved Budget (including any and all interest accruing on the Debtor's obligations owing to the Vx Entities); (ii) payment of all pre-petition and post-petition accrued but unpaid attorneys' fees, costs and expenses, subject to the right of the Debtor to object to the reasonableness of the Lender's attorneys' fees within fifteen (15) days of submission by the Lender to the Debtor's counsel of such invoices.  In the event that the Debtor does not timely object to such fees and expenses, the Debtor shall have waived any objection to such fees and expenses and such amounts shall be deemed allowed.  In

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

1   the event that the Debtor objects to all or a portion of such fees and expenses of the Lender's

2   counsel and no agreement can be reached among the parties following good faith efforts to

3   resolve such disputes, this Court shall retain jurisdiction to determine the reasonableness of the

4   Lender's attorneys' fees.   The Lender may apply the adequate protection payments in the

5   Approved Budget in reduction of its indebtedness in accordance with the Note and the Security

6   Agreement.

7         16.    Service of Order. Promptly after the entry of this Cash Collateral Order, Debtor

8   shall mail, by first class mail, a copy of this Cash Collateral Order to all parties who have filed

9   requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of

10  service regarding same with the Clerk of the Court.

11        17.    Binding Effect; Successors and Assigns. The provisions of this Cash Collateral

12  Order shall be binding upon all parties in interest in this Chapter 11 case, including, without

13  limitation, creditors, and Debtor and their respective successors and assigns (including any

14  Chapter 11 trustee hereafter appointed or elected for the estate of the Debtor or any Chapter 7

15  trustee appointed in a superseding Chapter 7 case), and shall inure to the benefit of Creditors,

16  Debtor and their respective successors and assigns.

17        **IT IS SO STIPULATED:**

| McDONALD CARANO WILSON LLP | K&L GATES LLP |
|---|---|
| By:    /s/ Ryan Works | By:  /s/ David Weitman |
| Ryan J. Works, Esq. (NVBN 9224) | David Weitman, Esq. |
| Amanda M. Perach, Esq. (NVBN 12399) | *[Admitted pro hac vice]* |
| 2300 West Sahara Avenue, Suite 1000 | 1717 Main Street, Suite 2800 |
| Las Vegas, Nevada  89102 | Dallas, TX 75201 |
| Telephone Number: (702) 873-4100 | United States of America |
| Facsimile Number:  (702) 873-9966 | P: +1.214.939.5500 |
| rworks@mcdonaldcarano.com | F: +1.214.939.5849 |
| aperach@mcdonaldcarano.com | david.weitman@klgates.com |
|  | *Counsel for Vx Entities* |
| *Proposed Counsel for TEM Enterprises* |  |

<div style="writing-mode: vertical">McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966</div>

**SNELL & WILMER**

By:_____/s/ Bob Olson_____
Bob L. Olson, Esq.
Snell & Wilmer
3883 Howard Hughes Pkwy #1100
Las Vegas, NV  89169-5958
Telephone: 702.784.5295
Email: bolson@swlaw.com
*Counsel for Vx Entities*

**IT IS SO ORDERED.**

# # #

Submitted by:

MCDONALD CARANO WILSON LLP

By:_____/s/ Ryan J. Works_____
Ryan J. Works, Esq. (NV Bar No. 9224)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102
*Proposed Counsel for TEM Enterprises*

EXHIBIT 1

TEM Enterprises, Inc.

Cash Budget

For the Three Months Ending August 31, 2014

| | Jun-14 | Jul-14 | Aug-14 |
|---|---|---|---|
| Beginning cash balance | 376,588 | 9,902 | 74,035 |
| Cash from operating revenues | 426,320 | 1,160,000 | 1,170,000 |
| **Expenditures** | | | |
| Aircraft maintainence reserves | - | 130,000 | 130,000 |
| Aircraft lease payments | - | - | 150,000 |
| Engine Leases (Use Charges payable to VX Entities) | 22,533 | 26,866 | 26,866 |
| Engine Maintenance Reserves (Additional Use Charges payable to VX Entities)[1] | | 150,000 | 80,000 |
| Contract Maintenance | 32,000 | 32,000 | 32,000 |
| Rents | 13,000 | 15,000 | 15,000 |
| Utilities/Phones | 6,000 | 6,000 | 6,000 |
| Fuel (VX Entities) | - | 20,000 | 20,000 |
| Parts | 5,000 | 20,000 | 20,000 |
| Wheels/Brakes | 15,000 | 20,000 | 20,000 |
| Crew Travel | 20,000 | 20,000 | 20,000 |
| Taxes & Fees | 2,500 | 5,000 | 5,000 |
| Attorney Fees | - | 20,000 | 20,000 |
| Payroll | 490,000 | 470,000 | 470,000 |
| Workers Comp | 63,232 | - | - |
| Aviation insurance | 45,000 | 90,000 | 100,000 |
| Employee health insurance | 23,000 | 23,000 | 23,000 |
| TSA 9/11 taxes | 14,201 | 13,000 | 12,765 |
| Federal excise taxes | 8,600 | 8,600 | 4,300 |
| Mexico overflight permits | - | 16,000 | 8,000 |
| Pre-Petition Employee Wages (to be approved by Court) | 7,691 | - | - |
| Pre-Petition Employee Reimbursable Expenses (to be approved by Court) | 3,704 | - | - |
| Pre-Petition Employee Benefits (to be approved by Court) | 3,423 | - | - |
| Pre-Petition Critical Vendors (to be approved by Court) | 18,121 | - | - |
| Adequate Protection Payments (VX Entities) | | | 20,000 |
| Trustee fees | - | 10,400 | - |
| Total expenditures | 793,006 | 1,095,866 | 1,182,931 |
| Net cash flow | (366,686) | 64,134 | (12,931) |
| Ending cash balance | 9,902 | 74,035 | 61,104 |

[1]The amount due for July includes an $80,000 "catch up" payment from June. One half of the June payment ($40,000) shall be tendered on or before July 15, 2014, while the other half ($40,000) will be due on or before July 31, 2014