McDONALD CARANO WILSON LLP
Ryan J. Works, Esq. (NV Bar No. 9224)
Amanda M. Perach, Esq. (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone Number: (702) 873-4100
Facsimile Number:  (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com
*Proposed Counsel for TEM Enterprises*

*Electronically Filed June 19, 2014*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re

TEM ENTERPRISES,

    Debtor in Possession.

Case No.: 14-13955-abl

Chapter 11

**MOTION TO ASSUME AND CURE EXECUTORY CONTRACT**

Hearing Date:  July 23, 2014
Hearing Time:  1:30 p.m.

Hearing Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101

    TEM ENTERPRISES d/b/a/ XTRA AIRWAYS ("Debtor" or "Debtor in Possession"), in the above-captioned case (the "Chapter 11 Case"), hereby files this motion for an order authorizing the cure and assumption of an executory contract by and between the Debtor and Accountemps (the "Agreement") pursuant to 11 U.S.C. § 365 (the "Motion").  As discussed more fully below, the assumption of the Agreement is critical to the ultimate success of the Debtor.

**I.    JURISDICTION**

    1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)

    2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.    The statutory basis for the relief requested herein is 11 U.S.C. § 365.

4. Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## II. BACKGROUND

1. On June 4, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Bankruptcy Code (the "Bankruptcy Code"). [Docket No. 1].

2. The Debtor is continuing in possession of its property and is operating and managing its businesses, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner, and statutory committee has been appointed.

4. Prior to the Petition Date, the Debtor began its efforts to attempt to restructure the company outside of bankruptcy. Dunn Decl. at ¶ 4. Pursuant to this goal, the Debtor sought out an experienced chief financial officer who could aid in the reorganization of the Debtor and its finances. *Id*. In particular, the Debtor sought someone who could aid in the Debtor's restructuring efforts and assume the roles of chief financial officer, controller and treasurer. *Id*. The Debtor sought someone who could fill the roles of multiple employees while only compensating one person for such services. *Id*.

5. On May 12, 2014, the Debtor and Accountemps entered into an Agreement which provided for the temporary employment of Robert Godfrey ("Godfrey") as the chief financial officer (the "CFO") of the Debtor. A true and correct copy of the Agreement is attached to the Dunn Decl. as "**Exhibit 1**." The Debtor selected Godfrey because of his vast experience in company restructuring and in acting as the CFO, controller or executive for other similarly-situated companies. A true and accurate copy of Godfrey's resume (the "Godfrey Resume") is attached to the Dunn Decl. as "**Exhibit 2**". Based on his substantial expertise in a wide range of roles, the Debtor selected Godfrey to fill its CFO position and to take on the

1  duties of the Debtor's controller and treasurer. *Id*; *see also* Dunn Decl. at ¶ 5.

2        6.    Pursuant to the Agreement, the Debtor agreed to pay $64.78 to Accountemps per hour of work performed by Godfrey. *See* Agreement (Ex. 1) at 1. The Agreement also required compensation in the amount of 1.5 times the hourly rate for overtime work. *Id*. at 3. Godfrey is then paid by Accountemps based upon a separate arrangement between him and the agency. *Id*.

      7.    On or around May 16, 2014, the first payment in the amount of $2,695.17 to Accountemps came due. Dunn Decl. at ¶ 6. Due to the Debtor's bankruptcy filing, its first payment to Accountemps was not honored by the bank. *Id*. Since then and up to the Petition Date, the Debtor has accrued an additional $7,581.86 in fees due and owing to Accountemps. *Id*. As such, as of the Petition Date, the Debtor owes Accountemps a total of $10,277.03 for the work performed by Godfrey prior to bankruptcy. *Id*.

      8.    Pursuant to the Agreement, "invoices are due upon receipt." *See* Agreement (Ex. 1) at 3. Furthermore, the Agreement requires the Debtor to pay all "costs of collection, including reasonable attorneys' fees, whether or not legal action is initiated. Additionally, [it] may, at [its] option, charge interest on any overdue amounts at a rate of the lesser of 1 ½% per month or the highest rate allowed by applicable law from the date the amount first became due." *Id*.

      9.    Following Debtor's failure to pay, Accountemps stated that it would not allow for the continued services of Godfrey unless it was paid in full. Dunn Decl. at ¶ 7. In order to ensure that Godfrey's services continue, in aid of the Debtor's bankruptcy, the Debtor and Accountemps agreed that, contingent upon the Court's approval, Debtor would tender the pre-petition amount due to Accountemps ($10,277.03), excluding interest and fees, to cure and assume the Agreement post-petition. *Id*. This is absolutely necessary during this critical stage of the Debtor's Chapter 11 Case.

      10.    As such, Debtor hereby requests that the Motion be granted in its entirety to allow the Debtor to continue to utilize Godfrey's services as CFO which are vital to the initial filings required by the Bankruptcy Code, continued assistance to counsel in negotiating budgets, use of cash collateral, monthly operating reports, and other financial matters that are

central to the Chapter 11 Case and any chance of a successful reorganization.

## III.   LEGAL ARGUMENT

Section 365(a) of the Bankruptcy Code permits the Debtor to assume or reject any executory contract or unexpired lease of the Debtor. 11 U.S.C. §365(a). In order to assume an executory contract which is in default, the Debtor must cure such default or provide adequate assurance of a prompt cure. 11 U.S.C. §365(b)(1)(A).

The decision to assume an executory contract is a matter of business judgment requiring only a summary review by the court. *In re G.I. Industries, Inc.*, 204 F.3d 1276, 1282 (9th Cir. 2000) ("A bankruptcy court's hearing on a motion to reject is a summary proceeding that involves only a cursory review of a trustee's decision to reject the contract. Specifically, a bankruptcy court applies the business judgment rule to evaluate a trustee's rejection decision…"); *Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*) 4 F. 3d. 1095, 1099 (2d Cir. 1993) *cert. denied*, 511 U.S. 1026 (1994). Under the business judgment test, a court should approve a debtor's proposed disposition of a contract if it is beneficial to the estate. *In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 (8th Cir. 1997) (business judgment test in deciding whether to approve a trustee's motion to assume, reject, or assign an unexpired lease or executory contract entails a determination that the transaction is in the best interest of the estate); *Commercial Finance Ltd. v. Hawaii Dimensions, Inc.*, 47 B.R. 425, 427 (D. Haw. 1985).

Here, there is no question that the cure and assumption of the Agreement is in the best interest of the estate and satisfies the business judgment test. The Agreement provides for the employment of a CFO who is well-versed in the background of the Debtor and who brings a wealth of experience to the table. For example, Godfrey has extensive experience in (1) building financial projection models used to solicit debt and equity financing and to acquire and sell companies and financial assets; (2) performing and providing due diligence associated with mergers and acquisitions (M&A); (3) conducting M&A and other contract negotiations; and (4) aiding in the process of corporate formation and dissolution. *See generally* Resume (Ex. 2). In complex reorganizations, such as this, the presence of a qualified CFO is essential to the

company's ability to successfully reorganize.

On the other hand, it would be contrary to the interests of the estate to terminate Godfrey as the CFO because, absent his employment, the Debtor would be forced to hire multiple people to fill his role without expending the time and money on marketing efforts to locate qualified candidates. Additionally, Godfrey has been working on behalf of the Debtor for purposes of assisting Debtor's proposed counsel and has already learned the background and financial condition of the Debtor and thus the hiring of another CFO, controller and treasurer would duplicate such efforts without any beneficial return. If this Motion is denied, the Debtor will have lost several weeks of gained knowledge on behalf of Godfrey, including his work preparing the financial aspects of the Debtor's first-day filings, cash collateral stipulation, budget, and other matters that are purely within the province of the CFO, controller and treasurer.

Finally, the hourly fee charged for Godfrey's services is consistent with the compensation paid to other qualified CFOs[1] in the Debtor's industry especially given that Godfrey performs the roles of CFO, controller and treasurer while using his experience to aid in this complex restructuring effort. Dunn Decl. at ¶ 8. Allowing for the cure and assumption of the Agreement would only serve to benefit the estate and substantially improve the likelihood of the Debtor successfully reorganizing.

## IV. CONCLUSION

Based on the foregoing, Debtor respectfully requests that its Motion be granted and that it be permitted to cure and assume the Agreement to allow the CFO, Robert Godfrey, to continue to provide services to the Debtor, pursuant to the Agreement.

---

[1] Indeed, the Debtor's previous CFO earned a salary of $100,000.00 per year plus benefits. Dunn Decl. at ¶ 8.

DATED this 19th day of June, 2014.

MCDONALD CARANO WILSON LLP

By: /s/ Ryan J. Works
RYAN J. WORKS (NV Bar No. 9224)
AMANDA M. PERACH (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com
*Proposed Counsel for TEM Enterprises*