McDONALD CARANO WILSON LLP
Ryan J. Works, Esq. (NV Bar No. 9224)
Amanda M. Perach, Esq. (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone Number: (702) 873-4100
Facsimile Number: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com
*Proposed Counsel for TEM Enterprises*

*Electronically Filed July 22, 2014*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 14-13955-abl |
| TEM ENTERPRISES, | Chapter 11 |
| Debtor in Possession. | **MOTION FOR INTERIM APPROVAL OF POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)(2) AND SETTING FINAL HEARING FOR APPROVAL OF THE SAME** |
| | **Hearing Date:** *OST Requested*<br>**Hearing Time:** *OST Requested* |
| | **Hearing Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101** |

TEM ENTERPRISES d/b/a/ XTRA AIRWAYS ("Debtor" or "Debtor in Possession"),

in the above-captioned case (the "Chapter 11 Case"), hereby files this motion (the "Motion"),

pursuant to sections 105, 361, 363 and 364 of Title 11 of the United States Bankruptcy Code

(the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure ("FRBP") for an order (1) authorizing the Debtor to obtain post-petition financing

(the "DIP Financing") in the form of a loan in the amount of up to $500,000.00 pursuant to a

revolving loan agreement (the "DIP Loan Agreement") to be entered into by and between

AerLine Holdings LLC (the "DIP Lender" or "AerLine") and the Debtor; (2) granting the DIP

Lender a first-priority senior secured claim on all of the Debtor's assets pursuant to section

364(c)(2) of the Bankruptcy Code, subject to the agreement of the DIP Lender and the Debtor

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

to use the first proceeds of the financing to satisfy the secured claim of V31-A&E LLC (the "Lender" or "V31"), in accordance with the terms and conditions of the Pay-Off Letter (as defined below); and (3) scheduling a final hearing (the "Final Hearing") to consider entry of a final order granting the relief sought herein. The proposed interim order approving the Motion and DIP Loan Agreement and authorizing DIP Financing on an interim basis is attached hereto as **Exhibit 1**.

This Motion is based upon the following memorandum of points and authorities, the Omnibus Declaration of Lisa Dunn (the "Dunn Decl."), filed concurrently herewith, and the argument of counsel at the hearing of this matter.

## I.     JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein is 11 U.S.C. §§ 105, 361, 363 and 364.

4.      Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## II.     RELEVANT FACTS

### A.     Background of Debtor

1.      On June 4, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Bankruptcy Code (the "Bankruptcy Code"). [Docket No. 1].

2.      The Debtor is continuing in possession of its property and is operating and managing its businesses, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

statutory committee has been appointed.

### B. Necessity and Efforts to Obtain DIP Financing

1.    Since the Petition Date, the Debtor has worked diligently to locate a prospective lender to provide it with DIP Financing to continue operations and help fund reorganization of the Debtor.  Dunn Decl. at ¶ 4.

2.    On July 2, 2014, the Debtor and AerLine entered into a Letter of Intent (the "LOI") whereby AerLine agreed, subject to this Court's approval, to provide $3,500,000.00 to the Debtor as exit financing, in exchange for 100% ownership in the reorganized Debtor.  A true and accurate copy of the LOI is attached to the Dunn Decl. as **Exhibit 1**.   As a showing of good faith, AerLine also agreed to deposit $500,000.00 into an escrow account which could be used as debtor-in-possession financing. *Id.* at 2.

3.    On July 3, 2014, pursuant to the LOI, AerLine deposited $500,000.00 into an escrow account.  Dunn Decl. at ¶ 5.  AerLine and the Debtor have negotiated and propose entering into the DIP Loan Agreement, which provides, *inter alia*, for the use of up to $500,000.00 in funds prior to the confirmation of the Debtor's plan of reorganization.  A true and accurate copy of the proposed DIP Loan Agreement is attached to the Dunn Decl. at **Exhibit 2**.

4.    The Debtor intends to utilize the $500,000 credit facility to satisfy the Debtor's sole secured claim (the "V31 Claim") held by the Lender, which has a blanket first-priority lien on the Debtor's assets and received adequate protection liens under that certain *Stipulation and Agreed Order Authorizing Debtor To Use Cash Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363* [Docket No. 102] (the "Cash Collateral Order").  Dunn Decl. at ¶ 6.  This claim is more than $240,000.00 which, if unpaid, will continue to grow as a result of continuing cash collateral obligations, including interest, fees and costs of this Chapter 11 Case. *Id.*

5.    Over the course of the last three[1] months, V31 asserts that it has incurred approximately $74,000.00 in pre-petition and post-petition legal fees, costs, and expenses

---

[1] This includes attorneys' fees incurred during V31's pre-petition collection efforts.

DA-3343165 v1 1204510-00004

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

associated with the V31 Claim. *Id*. Moreover, the V31 Claim continues accruing interest at 15% since it went into default, pursuant to the terms and conditions of the operative loan documents. Dunn Decl. at ¶ 7.

6.    The remaining funds from the DIP Financing will be used for the general operations of the Debtor, consistent with the Debtor's revised budget. *Id*. at ¶ 8. The revised budget will include additional payroll expenses for pilots and staff necessary to increase the Debtor's charter operations. *Id*. In order to service the needs of the Debtor's growing customer base, the Debtor will be acquiring at least two more aircraft. *Id*. The proposed DIP Financing will also be used for certain reorganization expenses and continuing post-petition obligations. A true and accurate copy of the proposed budget is attached to the Dunn Decl. as **Exhibit 3**. The proposed budget provides for continued monthly adequate protection payments and protections for the Vx Entities, consistent with the terms and conditions of the Cash Collateral Order and budget attached thereto. *Id*.

7.    Debtor requests that this $500,000 credit facility be approved on an expedited basis to eliminate the V31 Claim and to provide operating capital to continue the Debtor's operations in line with Debtor's plan of reorganization and exit strategy. Expedited relief is necessary because the Debtor's 60-day deadline pursuant to 11 U.S.C. § 1110 is set to expire on Sunday, August 3, 2014 at which time, absent consensual extensions, Debtor will be required to return and surrender certain aircraft. Concurrently with this Motion, Debtor is also filing a motion to reject certain lease agreements and for authority to enter into new lease agreements.[2] Debtor has asked that both motions be heard on an order shortening time.

8.    Due to the Debtor's current financial situation, and after talking with other interested parties, the Debtor believes that the terms set forth in the proposed DIP Loan Agreement are the most favorable terms available. Dunn Decl. at ¶ 9. Indeed, if the DIP Lender did not hope to acquire the new equity in the reorganized Debtor, it would not likely

---

[2] The motions to enter into new lease agreements will be with the existing lessors, whose aircraft leases will be rejected, and such motions will make clear that the Debtor will not be obligated to pay rejection damages on account of the rejection of such leases since the payment terms of the new leases will be "substituted" for the payment terms of the old leases, with the Debtor not obligated to cure any pre-petition arrearages under such leases.

DA-3343165 v1 1204510-00004

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

have provided such terms to the Debtor. *Id*.

9.      AerLine and the Debtor have proposed that AerLine's up-to $500,000 secured claim (arising out of the DIP Loan Agreement) be treated like an earnest money deposit that will be credited to the $3,500,000.00 proposed exit financing for the Debtor's plan of reorganization, thus, increasing the potential recovery for the Debtor's administrative and unsecured creditors.

10.     The Debtor does not believe alternative DIP Financing from other prospective lenders is available and has determined that a comparable arrangement is not likely available elsewhere. *Id*. at ¶ 10.

11.     In particular, the agreement with V31 provides for an interest rate of 9% per annum and that rate jumps to 15% if a default occurs. Dunn Decl. at ¶ 11. These terms were in place well before the bankruptcy filing. *Id*. Any loan obtained after the Petition Date would likely provide for an even greater interest rate due to the level of risk involved in financing a debtor in bankruptcy. *Id*.

12.     The proposed DIP Loan Agreement sets forth an interest rate in the amount of 6% per annum (9% less than the current V31 loan, which is in default) with a mere 10% default rate of interest (5% less than the V31 loan). *Id*. at ¶ 12. By comparison, it is clear that the terms of the DIP Loan Agreement are certainly competitive and favorable[3] to the Debtor. *Id*.

13.     Overall, the Debtor has sought out DIP Financing to ensure that it has sufficient working capital to consummate its forthcoming plan of reorganization and to terminate the growing V31 Claim. *Id*. at ¶ 13.

14.     The DIP Financing proposed here should provide the Debtor with sufficient funds to reach its end goal of a successful reorganization. *Id*. The Debtor expects to file its disclosure statement and plan within the next several weeks. *Id*.

---

[3] Not only does this demonstrate the fact that the terms are the best terms available in the market, it also underscores the benefit to the estate if the Motion is granted. Specifically, by taking out the V31 Claim with a new loan at lower rates of interest, the Debtor is essentially refinancing its prior loan at a better rate thereby reducing the overall claim that would have had priority over the unsecured creditors in either case.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

15.    On July 2, 2014, this Court entered the Cash Collateral Order[4] providing for the Debtor's authorization to use the Lender's cash collateral (as term is defined in 11 U.S.C. § 363(a)), in order to meet the Debtor's ordinary operating expenses, including: the payment of aircraft lease rents, maintenance costs, payroll, and other general administrative expenses, and for providing adequate protection of the interests of the Vx Entities (including, the Lender, which is the first-priority lienholder on the Collateral), as set forth in the Cash Collateral Order.

16.    Pursuant to the terms of the Cash Collateral Order and the terms set forth below, if the Debtor seeks financing from another lender with liens to be granted on a parity with, or superior to, those liens and security interests of the Lender, the Debtor shall pay to the Lender the outstanding amount of the pre-petition debt owed to the Lender, unless otherwise expressly agreed to in writing by the Lender.

17.    The Lender has agreed to release its liens on the Debtor's assets upon the indefeasible payment in full of the indebtedness owed to the Lender pursuant to the terms and conditions set forth in a payoff, indemnity and release letter (the "Pay-Off Letter")[5] in favor of the Lender, in form and substance acceptable to the Lender, and the Financing Order shall provide as follows:

a.    The Debtor, acting through its President, is hereby authorized and directed to indefeasibly pay in full in cash to the Lender the Lender Debt (as defined below) and to execute and deliver the Pay-Off Letter, such execution and delivery to be conclusive of such authority to act in the name of and on behalf of the Debtor.  The Debtor is hereby further authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements as the Lender may reasonably require as evidence, and for the protection, of the Lender Debt (as defined below) and the collateral securing repayment of the Indebtedness (the "Collateral") or which may be otherwise deemed necessary by the Lender to effectuate the terms, conditions, and purposes of the Pay-Off Letter.

---

[4] The Vx Entities are entitled to all of the rights, liens, priorities, and benefits of the Cash Collateral Order, as may be extended thereafter.
[5] A true and accurate copy of the Pay-Off Letter is attached to the Dunn Decl. as "**Exhibit 4**."

DA-3343165 v1 1204510-00004

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

b.   Promptly following the entry of the Financing Order consistent with the terms hereof, the Lender shall provide the Debtor with a payoff, indemnity, and release letter in favor of the Lender, in form and substance acceptable to the Lender in all respects, which sets forth the following, each as of the date of such Pay-Off Letter (and which may be updated by the Lender, at any time prior to the initiation of the funding of the payoff of the Lender as provided below):

i.   The unpaid principal balance of the Debtor's obligations to the Lender (collectively, the "Lender Debt");

ii.   The aggregate of accrued and unpaid interest owed to the Lender, with respect to the Lender Debt;

iii.   The aggregate of accrued and unpaid fees and expenses owed to the Lender with respect to the Lender Debt, for which the Debtor is responsible (which aggregate shall be broken down by category);

iv.   A per diem interest and fee amount, with respect to the Lender Debt; and

v.   The aggregate of credits to which the Debtor is entitled (which aggregate shall be broken down by category).

c.   Upon the receipt by the Lender of the proceeds of the wire transfer of all amounts owed to the Lender, as set forth in the Pay-Off Letter:

i.   Any lien of the Lender on any asset of the Debtor shall be terminated and of no force or effect whatsoever.

ii.   Within three (3) days of such receipt by the Lender of the amount set forth in the Pay-Off Letter, the Lender shall deliver termination statements and such other documents as are reasonably satisfactory to the Debtor to terminate all liens and all collateral interests of the Lender in any asset of the Debtor owned as of the Petition Date and thereafter granted post-petition security interests in by the Debtor in favor of the Lender under the terms and conditions of the Cash Collateral Order, subject to filing of such instruments with appropriate state and local filing offices.

d.   The automatic stay is modified to authorize and permit the Debtor to indefeasibly pay in full in cash to the Lender such amounts due and owing to the Lender constituting the Lender Debt.

DA-3343165 v1 1204510-00004

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

e.      The payments made hereunder shall be binding on the Debtor, any successor for the Debtor, and all creditors of the Debtor, as provided in Bankruptcy Code Section 364(e).

**III.    Summary of DIP Loan Agreement Terms**

1.      The Debtor was able to obtain the proposed DIP Financing as a result of lengthy negotiations with the DIP Lender.  Dunn Decl. at ¶ 14.  The DIP Loan Agreement is the result of such negotiations and constitutes an arms-length transaction.  *Id.*

2.      The Debtor has been contacted by several interested parties during the course of its negotiations with AerLine; however, Debtor was unable to locate more favorable terms.  Dunn Decl. at ¶ 15.

3.      In summary, the material terms of the DIP Loan Agreement are set forth below.[6]

| Relevant Provision | Description |
|---|---|
| Borrower | TEM Enterprises d/b/a Xtra Airways |
| Lender | AerLine Holdings, LLC |
| Principal Amount of Loan | $500,000.00 |
| Interest | 6% per annum, if no default; 10% per annum, if in default |
| Security | First priority lien on all assets of the Debtor |
| Term | The earliest of (a) July __, 2015, (b) the date that is thirty (30) days after entry of the Interim Order by the Bankruptcy Court if the Final Order has not been entered by the Bankruptcy Court prior to the expiration of such thirty (30) day period, (c) the date of substantial consummation (as defined in section 1101 of the Bankruptcy Code and which for purposes of the DIP Loan Agreement shall be no later than the effective date) of a plan of reorganization that is confirmed pursuant to an order of the Bankruptcy Court, and (d) the occurrence of an "Event of Default" as set forth in section 7.1 of the DIP Loan Agreement |
| Miscellaneous | If Lender is utilized as the purchaser of the Debtor, under a confirmed plan of reorganization, the funds loaned will be applied to the purchase price.  If Lender is not the purchaser, for any reason, Lender shall be repaid all outstanding amounts by any subsequent purchaser. |
| Events of Default | Set forth in section 7.1 of the DIP Loan Agreement |

---

[6] To the extent that any of the foregoing terms conflict with the terms set forth in the DIP Loan Agreement, attached to the Dunn Decl. as **Exhibit 2**, the DIP Loan Agreement shall control.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

4.      In all, the Debtor believes the proposed terms are reasonable under the circumstances of this case. Dunn Decl. at ¶ 15. Importantly, if the proposed plan is confirmed, the $500,000.00 will be credited to the proposed exit financing of $3,500,000 and the Debtor will not be required to tender such payments back to AerLine. *Id.* Accordingly, the Debtor respectfully requests that its Motion be granted and that it be permitted to obtain DIP Financing consistent with the DIP Loan Agreement, filed concurrently herewith, and that the first proceeds of the DIP Financing be used to indefeasibly pay in full the V31 Claim, in accordance with the terms and conditions of the Pay-Off Letter.

## IV. **LEGAL ARGUMENT**

### A. Pursuant to 11 U.S.C. § 364(c)(2), this Court May Authorize the Debtor to Obtain Credit and Incur Debt.

Pursuant to section 364(b) of the Bankruptcy Code, "The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title." Alternatively, if the Debtor is unable to obtain unsecured financing due to its financial position in bankruptcy, pursuant to section 364(c) of the Bankruptcy Code, the Court may:

> authorize the obtaining of credit or the incurring of debt—
> (1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). Furthermore, under subsection (d) of section 364 of the Bankruptcy Code, a debtor-in-possession may even grant a DIP lender a security interest in property already encumbered by another security interest if "(A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the holder of the [already existing] lien on the property…" 11 U.S.C. § 364(d). Importantly, courts do not impose on such debtors the onerous duty to investigate every possible financing arrangement. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n* (*In re Snowshoe Co. Inc.*) 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, the debtor in possession must merely make a good faith effort to locate

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

DA-3343165 v1 1204510-00004

alternative sources of financing which would be less burdensome.  *In re Stacy Farms*, 78 B.R. 494, 498 (Bankr. S.D. Ohio 1987); *see also In re Reading Tube Indus.* 72 B.R. 329, 333 (Bankr. E.D. Pa. 1987).

Although section 364 of the Bankruptcy Code is permissive rather than mandatory, courts generally defer to the business judgment of debtors in possession in determining whether debtor in possession financing should be authorized.  *Richmond Leasing v. Capital Bank, N.A.*, 762 F. 3d 1303, 1311 (5th Cir. 1985).  As noted by one court,

> [c]ases consistently reflect that the court's discretion under section 364 of the Bankruptcy Code is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as to benefit the parties in interest.

*See In re Ames Dept. Stores, Inc*., 115 B.R. 34, 40 (S.D.N.Y. 1990).

Here, the Debtor has demonstrated that the terms proposed in its DIP Loan Agreement are reasonable and necessary and that it has, in good faith, attempted to locate alternative sources of more favorable financing.  Moreover, the Debtor has used its reasonable business judgment in deciding to obtain secured credit pursuant to the DIP Loan Agreement, which will permit the Debtor to continue its operations, increase its potential revenue and satisfy its only secured claim – all of which serve to substantially benefit the creditors of the estate.  In no way is the bankruptcy process being leveraged as this DIP Loan Agreement will enable the estate to obtain a higher level of recovery because an additional $3 million is being made available to the Debtor as exit financing through a plan of reorganization.  Finally, the Debtor has several charter agreements it would like to enter into, which will initially require additional capital for pilots, staff, and operating costs.  The Debtor may not be capable of performing under its new charter agreements absent the DIP Loan.  As such, this Court should grant the Debtor's Motion and permit the Debtor to obtain DIP Financing as set forth under the DIP Loan Agreement.

### B. Pursuant to Fed. R. Bankr. P. 4001(c), This Court Should Grant This Motion on an Interim Basis and Set a Final Hearing For Granting This Motion on a Final Basis.

Federal Rule of Bankruptcy Procedure 4001(c)(1) provides that "[a] motion for

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

DA-3343165 v1 1204510-00004

authority to obtain credit shall be made in accordance with Rule 9014 and shall be accompanied by a copy of the credit agreement and proposed form of order." Fed. R. Bankr. P. 4001(c)(2) states, "…the court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion." LR 4001(b)(2) provides that "[m]otions for using cash collateral or obtaining credit to be heard on less than twenty-one (21) days' notice must be accompanied by separately filed affidavits or declarations setting forth the nature and extent of the immediate and irreparable harm that will result if the request is not granted, and must conform with the requirements to obtain an order shortening time under LR 9006."

Pursuant to a separate motion for order shortening time, filed concurrently herewith, the Debtor has requested that the Court schedule the interim hearing on this Motion on shortened time, which may be set so as to require less than 21 days' notice. As noted therein, good cause exists for this Court to set such hearing on less than 21 days' notice because the Debtor will continue to incur additional legal fees arising out of the V31 Claim. *See* Dunn Decl. at ¶ 6. Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor is only requesting authority to satisfy the V31 Claim in accordance with the terms and conditions of the Pay-Off Letter. The remaining amount requested will be used in the next several weeks for payment of increased operating costs associated with Debtor's new charter agreements.

Debtor has met the requirements of both Bankruptcy Rule 4001(c)(2) and LR 4001(b)(2) and good cause exists for this Court to set this Motion on less than 21 days' notice. Additionally, the Debtor requests that this Court set a final hearing on the Debtor's Motion, which will allow the Debtor to provide more than 21 days' notice to its creditors and other parties in interest.

## V. <u>CONCLUSION</u>

Based on the foregoing, Debtor respectfully requests that its Motion be granted and that it be permitted to obtain DIP Financing and indefeasibly pay the V31 Claim in accordance with the terms and conditions of the Pay-Off Letter and that the Debtor be permitted to use such DIP Financing for the additional purposes described herein, and that a final hearing on the Motion be set for final approval of the Debtor's proposed DIP Loan Agreement.

DA-3343165 v1 1204510-00004

1

2      DATED this 22nd day of July, 2014.

3                                        MCDONALD CARANO WILSON LLP

4

5                                        By:   /s/ Ryan J. Works
                                         RYAN J. WORKS (NV Bar No. 9224)
6                                        AMANDA M. PERACH (NV Bar No. 12399)
                                         2300 West Sahara Avenue, Suite 1200
7                                        Las Vegas, Nevada  89102
                                         Telephone:  (702) 873-4100
                                         Facsimile:   (702) 873-9966
8                                        rworks@mcdonaldcarano.com
                                         aperach@mcdonaldcarano.com
9                                        *Proposed Counsel for TEM Enterprises*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DA-3343165 v1 1204510-00004

# EXHIBIT 1

# EXHIBIT 1

MCDONALD CARANO WILSON LLP
Ryan J. Works, Esq. (NV Bar No. 9224)
Amanda M. Perach, Esq. (NV Bar No. 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone Number: (702) 873-4100
Facsimile Number: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

*Proposed Counsel for TEM Enterprises*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 14-13955-abl |
| TEM ENTERPRISES, | Chapter 11 |
| Debtor in Possession. | **[PROPOSED] ORDER GRANTING MOTION FOR INTERIM APPROVAL OF POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)(2) AND SETTING FINAL HEARING FOR APPROVAL OF THE SAME** |
| | **Hearing Date:** <br> **Hearing Time:** |
| | **Hearing Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101** |

THIS MATTER came before the Court on a hearing of TEM ENTERPRISES dba XTRA AIRWAYS' ("Debtor" or "Debtor in Possession*") Motion for Interim Approval of Post-Petition Financing Pursuant to 11 U.S.C. §364(c)(2) and Setting Final Hearing for Approval of*

*the Same* [Docket No. __] (the "Motion") and the *Declaration of Lisa Dunn in Support of Motion for Interim Approval of Post-Petition Financing Pursuant to 11 U.S.C. §364(c)(2) and Setting Final Hearing for Approval of the Same* [Docket No. __] (the "Declaration"). Ryan J. Works, Esq. appeared for Debtor. There were no oppositions to the Motion. The Court, having reviewed the above-referenced filings, proper notice having been given, and now being fully advised of the circumstances,

**THE COURT HEREBY FINDS:**

An immediate and potentially irreparable need for financing exists for the Debtor. The Debtor is seeking to obtain post-petition financing from AerLine Holdings LLC (the "DIP Lender"), with the first proceeds of such DIP financing to be used to indefeasibly pay in full the secured debt of the V31-A&E, LLC (the "Lender"), which is at a higher interest rate and includes continuing legal fees, costs and expenses of the Lender's counsel and continuing default interest until satisfied in full.

Pursuant to the terms of the Cash Collateral Order[1] [Docket No. 102] and the terms set forth below, if the Debtor seeks financing from another lender with liens to be granted on a parity with, or superior to, those liens and security interests of the Lender, the Debtor shall pay to the Lender the outstanding pre-petition debt owed to the Lender, unless otherwise expressly agreed to in writing by the Lender.

The Lender has agreed to release its liens on the Debtor's assets upon the indefeasible payment in full of the indebtedness owed to the Lender, pursuant to the terms and conditions set forth in a payoff, indemnity and release letter (the "Pay-Off Letter") in favor of the Lender, in form and substance acceptable to the Lender;

**IT IS THEREFORE ORDERED:**

1. The Debtor is authorized and empowered to borrow up to $500,000 from the DIP Lender, the first proceeds of which will be used to indefeasibly pay, in full, the claim of the Lender, pursuant to the terms and conditions of the Pay-Off Letter;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

DA-3343166 v2 1204510-00004

2.    The Debtor, acting through its President, is hereby authorized and directed to indefeasibly pay, in full and in cash to the Lender, the Lender Debt (as defined below) and to execute and deliver the Pay-Off Letter, such execution and delivery to be conclusive of such authority to act in the name of and on behalf of the Debtor.  The Debtor is hereby further authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements as the Lender may reasonably require as evidence, and for the protection, of the Lender Debt and the collateral securing repayment of the Lender Debt (the "Collateral") or which may be otherwise deemed necessary by the Lender to effectuate the terms, conditions, and purposes of the Pay-Off Letter.

3.    The Lender shall provide the Debtor with a payoff, indemnity, and release letter in favor of the Lender, in form and substance acceptable to the Debtor and the Lender in all respects, which sets forth the following, each as of the date of such Pay-Off Letter (and which may be updated by the Lender, at any time prior to the initiation of the funding of the payoff of the Lender as provided below):

a.    The unpaid principal balance of the Debtor's obligations to the Lender (collectively, the "Lender Debt");

b.    The aggregate of accrued and unpaid interest owed to the Lender, with respect to the Lender Debt;

c.    The aggregate of accrued and unpaid fees and expenses owed to the Lender with respect to the Lender Debt, for which the Debtor is responsible (which aggregate shall be broken down by category);

d.    A per diem interest and fee amount, with respect to the Lender Debt; and

e.    The aggregate of credits to which the Debtor is entitled (which aggregate shall be broken down by category).

4.    Upon the receipt by the Lender of the proceeds of the wire transfer of all amounts owed to the Lender, as set forth in the Pay-Off Letter:

DA-3343166 v2 1204510-00004

a.   Any lien of the Lender on any asset of the Debtor shall be terminated and of no force or effect whatsoever.

b.   Within three (3) days of such receipt by the Lender of the amount set forth in the Pay-Off Letter, the Lender shall deliver termination statements and such other documents as are reasonably satisfactory to the Debtor to terminate all liens and all collateral interests of the Lender in any asset of the Debtor owned as of the Petition Date and thereafter granted post-petition adequate protection security interests and liens by the Debtor in favor of the Lender under the terms and conditions of the Cash Collateral Order, subject to filing of such instruments with appropriate state and local filing offices.

5.   The automatic stay is modified to authorize and permit the Debtor to indefeasibly pay in full in cash to the Lender such amounts due and owing to the Lender constituting the Lender Debt.

6.   The payments made hereunder and the liens granted to the DIP Lender shall be binding on the Debtor, any successor for the Debtor, and all creditors of the Debtor, as provided in Bankruptcy Code Section 364(e).

7.   The Vx Entities shall continue to receive such payments and protections as set forth in the Cash Collateral Order and in all subsequent budgets, consistent therewith, except that following the payment of the Lender's secured claim as provided hereunder, the Lender shall no longer receive adequate protection payments or liens as provided thereunder.

8.   The hearing on final approval of the Motion shall be set for August __, 2014 at __.m.

**IT IS SO ORDERED.**

# # #

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

DA-3343166 v2 1204510-00004

In accordance with LR 9021, counsel submitting this **ORDER GRANTING MOTION FOR INTERIM APPROVAL OF POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)(2) AND SETTING FINAL HEARING FOR APPROVAL OF THE SAME** certifies that the order accurately reflects the court's ruling and that (check one):

☐     The Court has waived the requirement set forth in LR 9021(b)(1).

■     No party appeared at the hearing or filed an objection to the motion.

☐     I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

☐     I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

Submitted by:

MCDONALD CARANO WILSON LLP

By:   /s/ Amanda M. Perach
     Ryan J. Works, Esq., #9224
     Amanda M. Perach, Esq., #12399
     2300 West Sahara Avenue, Suite 1200
     Las Vegas, Nevada  89102
     rworks@mcdonaldcarano.com
     aperach@mcdonaldcarano.com
     *Proposed Counsel to the Debtor and Debtor in Possession*

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 • FAX (702) 873-9966

DA-3343166 v2 1204510-00004